# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC, | Case No. 24-90505 (CML) |
| Debtor. | |
| THE COALITION OF COUNSEL FOR JUSTICE FOR TALC, | |
| Appellant, | |
| v. | Civil Action No. 4:24-cv-04742 (KPE) |
| RED RIVER TALC LLC, | |
| Appellee. | |

## DEBTOR-APPELLEE RED RIVER TALC LLC'S
## MOTION TO DISMISS APPEAL

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012(a) & (b), Debtor-Appellee Red River Talc LLC certifies that the following corporations directly or indirectly own 10% or more of any class of Red River Talc LLC equity interests (listed in alphabetical order):

DePuy Synthes, Inc.
700 Orthopaedic Drive
Warsaw, IN 46582

Janssen Pharmaceuticals, Inc.
1125 Trenton-Harbourton Rd.
Titusville, NJ 08560

Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Johnson & Johnson Holdco (NA) Inc.
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Johnson & Johnson International
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Red River Talc LLC is the sole debtor in the above-captioned chapter 11 case. *See* Fed. R. Bankr. P. 8012(b)(1).

# TABLE OF CONTENTS

**Page**

BACKGROUND ..................................................................................... 1

ARGUMENT ......................................................................................... 5

I.  An order denying a venue-transfer motion is interlocutory and not
    appealable as of right. .............................................................. 5

II. The Coalition was required to seek leave to appeal but did not. .............. 7

III. Even if the Coalition had sought leave, this case would not qualify
     for interlocutory appeal. ........................................................ 8

   A.  No question of law controls. ........................................... 10

   B.  There is no question of law to debate. ............................. 12

   C.  An appeal would only delay the bankruptcy case. ......................... 13

CONCLUSION ....................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abecassis v. Wyatt*,
   2014 WL 5483724 (S.D. Tex. Oct. 29, 2014) .......................................11, 13

*Alvarez v. NES Glob. LLC*,
   2021 WL 4593985 (S.D. Tex. Oct. 6, 2021) ............................................... 9

*Dooley v. MB Indus., LLC*,
   2018 WL 521795 (W.D. La. Jan. 22, 2018) ................................... 10, 3, 14

*Dorsey v. Navient Sols., Inc.*,
   2015 WL 6442572 (E.D. La. Oct. 23, 2015)................................................ 9

*DuPree v. Kaye*,
   2008 WL 294532 (N.D. Tex. Feb. 4, 2008)................................................ 13

*Hayes v. U.S. Bank Tr., N.A.*,
   2024 WL 2155267 (W.D. Va. May 13, 2024) ............................................ 6

*In re Archer*,
   2024 WL 4202367 (N.D. Tex. Sept. 16, 2024) .........................11, 12, 13, 14

*In re Green*,
   2019 WL 4016202 (S.D. Tex. Aug. 26, 2019) ............................................ 9

*In re Highland Cap. Mgmt.*,
   2021 WL 3772690 (N.D. Tex. Feb. 11, 2021) .......................................... 11

*In re Lopez*,
   2016 WL 4546884 (S.D. Tex. Sept. 1, 2016)............................................ 10

*In re Reis*,
   2024 WL 4051674 (D. Idaho June 20, 2024) ............................................ 6

*In re Rolls Royce Corp.*,
   775 F.3d 671 (5th Cir. 2014) ...................................................... 7

*In re Royce Homes LP*,
   466 B.R. 81 (S.D. Tex. 2012) ...................................................... 8

*Lauro Lines s.r.l. v. Chasser*,
   490 U.S. 495 (1989) ...................................................... 7

*Matrix Tr. Co. v. Mims*,
   2024 WL 3092439 (N.D. Tex. June 20, 2024)........................................... 10

*Matter of Burch*,
   2022 WL 1117701 (5th Cir. Apr. 14, 2022)................................................. 6

*Matter of Delta Produce, L.P.*,
   845 F.3d 609 (5th Cir. 2016) ................................................5, 10

*Matter of Lieb*,
   915 F.2d 180 (5th Cir. 1990) ...................................................... 6

*Powers v. Montgomery*,
   1998 WL 159944 (N.D. Tex. Apr. 1, 1998) ............................................... 6

*Qazi v. Stage Stores, Inc.*,
   2020 WL 1431720 (S.D. Tex. Mar. 23, 2020) ........................................... 9

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
   589 U.S. 35 (2020) ...................................................... 5, 6

*Ryan v. Flowserve Corp.*,
   444 F. Supp. 2d 718 (N.D. Tex. 2006) .................................................... 11

*Sims v. Sunnyside Land, LLC*,
   425 B.R. 284 (W.D. La. 2010)................................................... 13

**STATUTES**

11 U.S.C. § 1125 ...................................................... 2

28 U.S.C. § 158 ........................................................................4, 5, 8

28 U.S.C. § 1292 ........................................................................9, 12

28 U.S.C. § 1408 ........................................................................ 2

**OTHER AUTHORITIES**

7 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy*
    (16th ed. 2024 update) ........................................................ 2, 6

Fed. R. Bankr. P. 8003 .................................................................. 8

Fed. R. Bankr. P. 8004 ..............................................................4, 8, 9

Red River Talc LLC, a Texas company, filed for bankruptcy in Texas. Appellants, a small group of tort-plaintiffs' law firms, moved to transfer venue to New Jersey. After briefing and a lengthy hearing, the Bankruptcy Court denied their motion; after another hearing, it denied their motion to reconsider. The law firms purport to appeal these obviously interlocutory orders without seeking this Court's leave or offering any arguments for how this appeal could meet the prerequisites for interlocutory review. In accordance with Federal Rule of Bankruptcy Procedure 8013, Red River thus moves to dismiss.

## BACKGROUND

Red River is a limited-liability company formed and domiciled in Texas. Dkt. 3-2, at 38 ¶ 1 (1st Day Decl.).[1] Its assets include a Texas subsidiary and contractual funding rights governed by Texas law, and its Chief Restructuring Officer lives and works in Texas. *Id.* at 50 ¶ 39, 127, 147; Dkt. 3-12, at 823 ¶ 9; Dkt. 3-2, at 1495–96; Dkt. 3-28, at 1–5. It faces tens of thousands of claims from plaintiffs alleging their use of Johnson's Baby Powder and other talc products gave them cancer; these will continue for decades and could cost billions of dollars to litigate and resolve. Dkt. 3-2, at 59–60 ¶¶ 59–61. A substantial percentage of those who have sued live in Texas. *See* Tr. of Mot. to Transfer at 205 (Ex. A).

---

[1] Dkt. 3 in this court contains the record on appeal.

Seeking to secure an equitable and expeditious resolution of these claims, Red River's predecessor and its ultimate parent negotiated for months with tort plaintiffs to reach a global settlement. Dkt. 3-2, at 83 ¶ 117. Once these negotiations had achieved supermajority buy-in—over 80%—from plaintiffs with ovarian and other gynecological cancers, Red River filed in this District a prepackaged bankruptcy under Chapter 11. *See* 11 U.S.C. § 1125(g) (permitting pre-filing solicitation of plan acceptance); Dkt. 3-11, at 1060 (Epiq. Decl.) (83% of all claimants voted for the proposed plan); Dkt. 3-12, at 825 ¶ 18 (82% of ovarian cancer claimants); *see also* Dkt. 3-2, at 1–20; *cf.* 7 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1100.10 (16th ed. 2024 update) (explaining prepackaged bankruptcies).

Appellants, who style themselves the Coalition of Counsel for Justice for Talc Claimants, are a small group of law firms (at last report, three) purporting to represent claimants who voted against the proposed plan.[2] The Coalition moved the Bankruptcy Court to transfer the case to the District of New Jersey. Dkt. 3-10, at 993–1022. It did not claim venue was improper in the Southern District of Texas. *See id.* at 1012; Ex. A at 200. (Under 28 U.S.C. § 1408(1), one venue option is a debtor entity's domicile.) Yet it said that, under 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1), the case should be transferred "in the

---

[2] *But see, e.g.*, Dkt. 3-21, at 110–13, 127–30; Dkt. 3-23, at 1170–84.

interest of justice" and "for the convenience of the parties." Red River and groups representing tens of thousands of tort claimants opposed. Dkt. 3-12, at 775–818, 851–56. They agreed that the interest-of-justice and convenience-of-the-parties standards applied, but argued that transfer was not warranted under them.

After briefing, Judge Lopez on October 10, 2024, held an all-day hearing. *See* Ex. A. He heard argument from multiple counsel for both sides, recessed for an hour to deliberate further, and then declined to transfer venue. Dkt. 3-20, at 34. In his oral ruling, he first confirmed that venue was proper in the Southern District of Texas because Red River is domiciled in-State. Ex. A at 201. He agreed that the interest-of-justice and convenience-of-the-parties standards from § 1412 applied, and noted that even if he found one or both grounds met, whether to transfer was still in his discretion. *Id.* at 201–03. He also noted that a debtor's initial venue choice is entitled to deference. *Id.* at 205.

On the merits, he first analyzed the convenience-of-the-parties factors discussed in the briefs, *see* Dkt. 3-10, at 1019–22; Dkt. 3-12, at 808–14, and concluded that none favored transferring the case, Ex. A at 204–09. He then agreed that the parties had identified the relevant considerations for the interest-of-justice analysis. *Compare* Dkt. 3-10, at 1013–14, 1017, *and* Dkt. 3-12, at 793–94, *with* Ex. A at 209. But he disagreed with the Coalition that Red River had

engaged in improper forum shopping that somehow threatened the integrity of the bankruptcy system. Ex. A at 209–14. Among other things, he recognized Red River had presented evidence that the vast majority of tort claimants favored the bankruptcy plan and that "they support a case being filed in this district." *Id.* at 211–12. And none of the other considerations used by courts in the Southern District favored transfer. *Id.* at 214–20. Instead, most of the Coalition's concerns could best be addressed at an upcoming hearing on their separate motion to dismiss, a hearing that also would address whether to confirm the prepackaged plan. *Id.* at 213–14, 218–20. (The consolidated hearing on these matters is scheduled to begin on February 18, 2025. Bankr. Dkt. 1028.)

The Coalition moved to reconsider, and Red River and tens of thousands of claimants again opposed. Dkt. 3-21, at 460–70, 563–67; Dkt. 3-23, at 1128. Judge Lopez addressed both sides' arguments in yet another hearing and denied the motion. *See* Tr. of Trial at 114–28 (Ex. B); Dkt. 3-26, at 540.

The Coalition purports to appeal Judge Lopez's denial of the venue-transfer and reconsideration motions. Dkt. 3-1, at 103–04. It did not file with its notice of appeal a motion for leave to appeal. *See* Fed. R. Bankr. P. 8004(a)(2) (motion for leave to appeal "must" accompany notice of appeal of interlocutory order). The notice of appeal, while citing 28 U.S.C. § 158(a), fails to specify a subsection. (Section 158(a)(1) grants jurisdiction over appeals from final orders,

whereas § 158(a)(3) grants jurisdiction over appeals from interlocutory orders, "with leave of the court.") The notice of appeal also cites 28 U.S.C. § 1292(a), which concerns circuit-court jurisdiction over appeals from certain interlocutory district-court orders.

## ARGUMENT

The Coalition seeks to appeal a plainly interlocutory order yet has not even attempted to shoulder its burden of showing that this case qualifies for leave to bring an interlocutory appeal. Nor could it: No debatable question of law controls, and granting leave would only delay the bankruptcy proceedings, which are fast-approaching plan confirmation. The appeal should be dismissed.

## I.    An order denying a venue-transfer motion is interlocutory and not appealable as of right.

Judge Lopez's decisions on venue were not final orders. Bankruptcy appeals are governed by 28 U.S.C. § 158, which authorizes district courts to hear appeals from *final* orders of bankruptcy courts. 28 U.S.C. § 158(a)(1). District courts may, in their discretion, exercise jurisdiction over appeals from *interlocutory* orders, but only if they first expressly grant leave. *Id.* § 158(a)(3); *Matter of Delta Produce, L.P.*, 845 F.3d 609, 618 (5th Cir. 2016) ("a district court cannot impliedly grant leave to appeal").

Bankruptcy proceedings, unlike "civil litigation generally," typically involve "an aggregation of individual controversies." *Ritzen Grp., Inc. v. Jackson*

-5-

*Masonry, LLC*, 589 U.S. 35, 37–38 (2020) (quotation marks omitted). Section 158(a) accounts for this in providing for appeals from orders "entered in cases *and proceedings*" (emphasis added), the latter referring to "discrete disputes within the overarching bankruptcy case." *Id.* at 37. So an order that does not finally resolve the bankruptcy case is nevertheless "final" if it "definitively dispose[s] of" such a "discrete dispute[]." *Id.* Otherwise, it is interlocutory.

Declining to transfer venue simply allows a case to continue and does not dispose of any discrete dispute within the case. Thus, far from finally resolving a "proceeding," it is a classic example of an interlocutory order.

The Fifth Circuit has held as much, consistent with *Ritzen Group* and the leading bankruptcy treatise. *See Matter of Burch*, 2022 WL 1117701, at *2 (5th Cir. Apr. 14, 2022) ("We are thus without jurisdiction to review the bankruptcy court's interlocutory order denying Burch's motion to … transfer venue."); *see also Matter of Lieb*, 915 F.2d 180, 184 (5th Cir. 1990) ("refusing transfer of venue" not a final order); *cf. Ritzen Grp.*, 589 U.S. at 45 & n.3 (ruling on venue final only if bankruptcy court *dismisses* case); 1 *Collier* ¶ 4.06[2] (order "declining to change venue[] is interlocutory"). A host of district courts considering bankruptcy appeals have agreed. *See, e.g., Hayes v. U.S. Bank Tr., N.A.*, 2024 WL 2155267, at *1 (W.D. Va. May 13, 2024); *Powers v. Montgomery*, 1998 WL 159944, at *1–2 (N.D. Tex. Apr. 1, 1998); *see also In re Reis*, 2024 WL 4051674, at *4 (D. Idaho

June 20, 2024) (post-*Ritzen Group*, venue-transfer orders not final); Order Dismissing Appeal for Lack of Jurisdiction, *In re Ford*, No. 1:22-cv-237 (N.D. Fla. Nov. 14, 2022), ECF No. 5 (same, analyzing under *Ritzen Group*) (Ex. C). Indeed, venue rulings are not even reviewable under the collateral-order doctrine. *See, e.g.*, *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989); *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014)*.*

The Coalition all but admits its appeal is interlocutory. In its notice of appeal, it says it is proceeding "pursuant to 28 U.S.C. §§ 158(a) and 1292(a)." Dkt. 3-1, at 103. While the first citation cryptically fails to identify whether the appeal is purportedly under subsection (a)(1) (final orders) or (a)(3) (interlocutory orders, with leave), the citation of § 1292(a) (even though doubly off point, because that provision authorizes appeals to a different court from different kinds of interlocutory orders) seems to recognize the appeal is interlocutory. The Court should take this point as conceded.

So the challenged orders were interlocutory, and the Coalition cannot appeal as of right.

## II.    The Coalition was required to seek leave to appeal but did not.

Because Judge Lopez's orders were not final, the Coalition needed to seek this Court's leave to appeal. But it failed to do so.

Section 158(a)(3) directs that appellants cannot appeal a bankruptcy court's interlocutory order unless a district court grants "leave." The Bankruptcy Rules address what the Coalition thus should have done: Its notice of appeal "must … be accompanied by a motion for leave to appeal." Fed. R. Bankr. P. 8004(a)(2). That motion must include sufficient facts to enable the district court to "understand the question presented" and must provide "reasons why leave to appeal should be granted." *Id.* R. 8004(b)(1).

The Coalition did none of this. Its notice of appeal was not accompanied by a motion for leave, and it has not filed one since, either in the bankruptcy or on this Court's docket. Nor has the Coalition apprised the Court of the facts of this case or offered any reasons why this Court should grant it leave to take an interlocutory appeal.

It was the Coalition's burden, as appellant, to demonstrate that it qualified for interlocutory review. *See In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012). By providing no reasons for why this case qualifies, it has failed to carry that burden. This Court should dismiss for that reason alone. *See* Fed. R. Bankr. P. 8003(a)(2) & 8004(d)(1).

## III. Even if the Coalition had sought leave, this case would not qualify for interlocutory appeal.

This appeal should also be dismissed for a more fundamental reason: Even if the Coalition complied with the procedure for seeking this Court's leave to

challenge the Bankruptcy Court's orders, it could not meet any of the "strict" requirements for interlocutory appeal.

*Legal Standard:* When an appellant neglects to request leave to appeal, the district court "may," among other things, "treat the notice of appeal as a motion for leave to appeal and grant or deny it." Fed. R. Bankr. P. 8004(d)(1). Section 158(a)(3) does not provide a standard for such a motion, so district courts borrow from 28 U.S.C. § 1292(b), which sets the standard for taking an interlocutory appeal from a district court to a circuit court. *E.g., In re Green*, 2019 WL 4016202, at *2 (S.D. Tex. Aug. 26, 2019).

Section 1292(b) is satisfied "only where (1) the order 'involves a controlling question of law,' (2) 'there is substantial ground for difference of opinion' on that question, and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Qazi v. Stage Stores, Inc.*, 2020 WL 1431720, at *2 (S.D. Tex. Mar. 23, 2020) (quoting § 1292(b)). These requirements are conjunctive: As this Court has noted, "*All* of 1292(b)'s criteria must be satisfied." *Alvarez v. NES Glob. LLC*, 2021 WL 4593985, at *3 (S.D. Tex. Oct. 6, 2021) (emphasis added). "The Fifth Circuit adheres to a strict interpretation of § 1292(b)." *Id.* (quotation marks omitted, alterations adopted).

Even when all three of § 1292(b)'s requirements are satisfied, it is still up to the court's "sound discretion" whether to grant leave. *Dorsey v. Navient Sols.,*

*Inc.*, 2015 WL 6442572, at \*1 (E.D. La. Oct. 23, 2015). "The Fifth Circuit disfavors interlocutory appeals and leave to appeal is sparingly granted." *Matrix Tr. Co. v. Mims*, 2024 WL 3092439, at \*2 (N.D. Tex. June 20, 2024) (quotation marks omitted, alterations adopted); *see Delta Produce*, 845 F.3d at 618 (even when district court has discretion to authorize them, interlocutory appeals in bankruptcy "are still disfavored"). This is because "Section 1292(b) is not a vehicle to question the correctness of a … court's ruling or to obtain a second, more favorable opinion." *Matrix Tr. Co.*, 2024 WL 3092439, at \*2 (quotation marks omitted). And particularly in the bankruptcy context, "[i]nterlocutory appeals are disfavored because they interfere with the overriding goal of the bankruptcy system, expeditious resolution of pressing economic difficulties." *In re Lopez*, 2016 WL 4546884, at \*1 (S.D. Tex. Sept. 1, 2016) (quotation marks omitted). "Thus, in accordance with the legislative history of § 1292(b), interlocutory appeals should be granted only in exceptional situations where allowing such an appeal would avoid protracted and expensive litigation." *Dooley v. MB Indus., LLC*, 2018 WL 521795, at \*4 (W.D. La. Jan. 22, 2018) (quotation marks omitted) (bankruptcy appeal).

   ***A. No Question of Law Controls:*** Because the Coalition could at most challenge Judge Lopez's fact-bound findings and discretionary rulings, no question of law could control its appeal.

The Coalition, Red River, and the Bankruptcy Court all agreed that 28 U.S.C. § 1412 governed the venue-transfer motion. *See* Dkt. 3-10, at 1012; Dkt. 3-12, at 790; Ex. A at 201–02. They also agreed on the considerations governing the § 1412 analysis. *See* Dkt. 3-10, at 1013–16, 1019–20; Dkt. 3-12, at 793–94, 799, 808; Ex. A. at 204–05, 209. So the only issue was *how to apply* those agreed legal standards to the facts of the Coalition's venue-transfer motion.

But "a 'question of law' does not mean the application of settled law to disputed facts," so a disagreement about the correct application of an uncontroversial legal rule is not a "question of law" for interlocutory review. *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006); *see, e.g.*, *Abecassis v. Wyatt*, 2014 WL 5483724, at *2 (S.D. Tex. Oct. 29, 2014) (same; "mixed questions of law and fact" also not included). Rather, a controlling question of law is one "the reviewing court could decide quickly and cleanly without having to study the record." *In re Archer*, 2024 WL 4202367, at *2 (N.D. Tex. Sept. 16, 2024) (quotation marks omitted); *see also In re Highland Cap. Mgmt.*, 2021 WL 3772690, at *2 (N.D. Tex. Feb. 11, 2021) (reviewing court should not need to "delve beyond the surface of the record in order to determine the facts").

In deciding the venue-transfer motion, Judge Lopez needed to resolve such fact-bound questions as whether the "proximity of … creditors" and witnesses favored venue in Texas or New Jersey, and whether the "economics of

the estate administration" and "judicial efficiency" favored a transfer. Ex. A at 205, 207, 204. These are not "pure question[s] of law" that this Court could resolve "quickly and cleanly without having to study the record." *Archer*, 2024 WL 4202367, at *2. So the appeal does not satisfy the first prerequisite for interlocutory review.

And there is no controlling question of law for a second, independent reason: Judge Lopez's decision on the venue-transfer motion was entirely discretionary. As he rightly observed, "28 U.S.C. 1412 and the rules also say that the Court *may* transfer [the case] to another district, thus transferring is not mandatory. It ultimately lies with the discretion of the Bankruptcy Court." Ex. A at 202 (emphasis added). So even if the Coalition were right that both the convenience of the parties and the interest of justice favored transfer (it is not), that question would still not "control[]" the outcome here. 28 U.S.C. § 1292(b).

**B. There Is No Question of Law to Debate:** There also is no substantial ground to debate a legal question.

Section 1292(b) further requires a "substantial ground for difference of opinion" about a question of law. This requirement is met if a bankruptcy court "rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, ... or if novel

and difficult questions of first impression are presented." *Dooley*, 2018 WL 521795, at *6 (quotation marks omitted); *see, e.g.*, *Abecassis*, 2014 WL 5483724, at *3 (same). By contrast, "[b]ald claims of bankruptcy court error or disagreement with applicable precedent do not render an issue one which has a substantial ground for difference of opinion." *Archer*, 2024 WL 4202367, at *2.

But here, as explained above, the Coalition, Red River, and the Bankruptcy Court all *agreed* on the correct legal standards to apply. *Cf. Sims v. Sunnyside Land, LLC*, 425 B.R. 284, 295 (W.D. La. 2010) ("The grounds for a difference of opinion must arise out of genuine doubt as to the correct legal standard." (quotation marks omitted)). That agreement forecloses the Coalition from establishing the second precondition for an interlocutory appeal. *Id.*

**C. An Appeal Would Only Delay the Bankruptcy Case:** Finally, granting review would not materially advance the ultimate termination of Red River's bankruptcy case. It would delay it.

To satisfy this requirement, an appellant must show that an appeal would "sav[e] time and expense for the court and the litigants." *DuPree v. Kaye*, 2008 WL 294532, at *2 (N.D. Tex. Feb. 4, 2008). This requirement is met, for example, when "an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Abecassis*, 2014 WL 5483724, at *5. It also

might be met when a reversal would "terminate the litigation entirely without undergoing additional proceedings and potentially trial." *Archer*, 2024 WL 4202367, at *3.

That is not this case. In less than two weeks, the Bankruptcy Court is scheduled to hold the consolidated hearing on whether Red River's bankruptcy plan should be confirmed or its case dismissed. And the court has emphasized its intention to decide matters quickly and move this case "with purpose." *E.g.*, Ex. A at 214, 218, 220–21. The issues at that hearing—whether the proposed plan is confirmable, whether the bankruptcy was filed in bad faith, etc.—must be resolved at some point, whether in Texas or New Jersey. Reversing Judge Lopez's non-transfer order would not eliminate complex issues or the need for trial; it would simply kick the proceedings to another district and require another court to learn this case. So granting leave to appeal would *cause* "protracted and expensive litigation," not "avoid" it. *Dooley*, 2018 WL 521795, at *4.

## CONCLUSION

The Coalition has filed a procedurally improper appeal of a nonfinal order, has failed to seek this Court's leave, and cannot demonstrate that it qualifies for interlocutory review. This Court should dismiss.

-14-

Date: February 10, 2025
Houston, Texas

Respectfully submitted,

*/s/ John F. Higgins*
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
James A. Keefe (TX 24122842)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Brad B. Erens (IL 06206864)
Amanda S. Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
dbprieto@jonesday.com
bberens@jonesday.com
asrush@jonesday.com

PROPOSED ATTORNEYS FOR
DEBTOR-APPELLEE

## Certificate of Compliance

I certify that this document complies with the word limit of Fed. R. Bankr.

P. 8013(f)(3)(A) because, excluding the parts of the document excluded by Fed.

R. Bankr. P. 8015(g), it contains 3,354 words.


Date: February 10, 2025                    _/s/ Amanda S. Rush_____
Houston, Texas                             Amanda S. Rush

## Certificate of Service

I certify that a true and correct copy of the foregoing document and all attendant papers were served upon counsel via the Court's electronic filing system on February 10, 2025.

Date: February 10, 2025                    */s/ John F. Higgins*
Houston, Texas                             John F. Higgins

# APPENDIX

## Table of Contents

Exhibit A:  Excerpts from Transcript of Motion to Transfer Case to Another District [43]; Motion to Transfer Case to Another District [139], *In re Red River Talc LLC*, No. 24-90505 (Bankr. S.D. Tex. Oct. 10, 2024) ................................................................................. A1

Exhibit B:  Excerpts from Trial, *In re Red River Talc LLC*, No. 24-90505 (Bankr. S.D. Tex. Nov. 12, 2024) .........................................................A31

Exhibit C:  Order Dismissing Appeal for Lack of Jurisdiction, *In re Ford*, No. 1:22-cv-237 (N.D. Fla. Nov. 14, 2022), ECF No. 5 ...................A49

**Exhibit A**

```
                UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                    .
 IN RE:                             .  Case No. 24-90505-cml
                                    .  Chapter 11
 RED RIVER TALC LLC,                .
                                    .  515 Rusk Street
                                    .  Houston, Texas 77002
                  Debtor.           .
                                    .  Thursday, October 10, 2024
 . . . . . . . . . . . . . . . .    .  2:30 p.m.
```

      TRANSCRIPT OF MOTION TO TRANSFER CASE TO ANOTHER DISTRICT [43];
            MOTION TO TRANSFER CASE TO ANOTHER DISTRICT [139]
                 BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                  UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

 For the Debtor:              Jones Day
                              By:  GREG GORDON, ESQ.
                                   DAN B. PRIETO, ESQ.
                                   AMANDA S. RUSH, ESQ.
                              727 North Harwood Street, Suite 500
                              Dallas, TX 75201-1515
                              (214) 220-3939

                              Skadden, Arps, Slate, Meagher &
                              Flom LLP
                              By:  ALLISON M. BROWN, ESQ.
                              One Manhattan West
                              New York, NY 10001
                              (212) 735-3000

 APPEARANCES CONTINUED.

 Audio Operator:             Courtroom ECRO Personnel

 Transcription Company:      Access Transcripts, LLC
                             10110 Youngwood Lane
                             Fishers, IN 46048
                             (855) 873-2223
                             www.accesstranscripts.com

      Proceedings recorded by electronic sound recording,
 transcript produced by transcription service.

1

```
APPEARANCES (Continued):

For the Debtor:              Porter Hedges
                            By:  JOHN F. HIGGINS IV, ESQ.
                                 MICHAEL SHANE JOHNSON, ESQ.
                            1000 Main Street, Suite 360)
                            Houston, TX 77002
                            (713) 226-6769

For the United States        United States Trustee
Trustee:                    By:  JAYSON RUFF, ESQ.
                                 LINDA RICHENDERFER, ESQ.
                            515 Rusk Street, Suite 3516
                            Houston, TX 77002
                            (202) 590-7962

For the Coalition of         Brown Rudnick LLP
Counsel for Justice         By:  JEFFREY JONAS, ESQ.
for Talc Claimants:         7 Times Square
                            New York, NY 10036
                            (212) 209-4800

                            Otterbourg P.C.
                            By:  SUNNI BEVILLE, ESQ.
                            230 Park Avenue
                            New York NY 10169
                            (212) 661-9100

                            Stutzman Bromberg Esserman & Plifka
                            By:  PETER C. D'APICE, ESQ.
                                 SANDER ESSERMAN, ESQ.
                            2323 Bryan Street, Suite 2200
                            Dallas, TX 75201
                            (214) 969-4900

For the Ad Hoc Group         Parkins & Rubio LLP
of Supporting Counsel:      By:  CHARLES RUBIO, ESQ.
                                 LENARD PARKINS, ESQ.
                            100 Park Avenue, Suite 1600
                            New York, NY 10017
                            (646) 419-0181

                            Brown Rudnick
                            By:  MICHAEL WINOGRAD, ESQ.
                                 DAVID J. MOLTON, ESQ.
                            7 Times Square
                            New York, NY 10036
                            (212) 209-4800
```

| | |
|---|---|
| For Sue Sommer-Kresse: | Haynes and Boone LLP<br>By:  PATRICK L. HUGHES, ESQ.<br>      DAVID TRAUSCH, ESQ.<br>1221 McKinney, Suite 4000<br>Houston, TX 77010-2007<br>(713) 547-2550 |
| | Motley Rice LLC<br>By:  DANIEL R. LAPINSKI, ESQ.<br>210 Lake Drive East, Suite 101<br>Cherry Hill, NJ 08002<br>(856) 667-0500 |
| For Travelers Casualty<br>and Surety Company<br>(f/k/a The Aetna<br>Casualty and Surety<br>Company) and The<br>Travelers Indemnity<br>Company: | Simpson Thacher & Bartlett<br>By:  ANDREW FRANKEL, ESQ.<br>      ELISHA GRAFF, ESQ.<br>425 Lexington Avenue<br>New York, NY 10017<br>(212) 455-3073 |
| | Gray Reed & McGraw LLP<br>By:  JASON S. BROOKNER, ESQ.<br>1601 Elm Street, Suite 4600<br>Dallas, TX 75201<br>(469) 320-6132 |
| For Rio Tinto America<br>Holdings Inc.: | Okin Adams Bartlett Curry LLP<br>By:  KELLEY EDWARDS, ESQ.<br>      MATTHEW OKIN, ESQ.<br>1113 Vine Street, Suite 240<br>Houston, TX 77002<br>(713) 228-4100 |
| For the Tort Claimants<br>of Nachawati Law<br>Group: | Ross Smith & Binford, P.C.<br>By:  JASON BINFORD, ESQ.<br>2901 Via Fortuna<br>Bldg. 6, Suite 450<br>Austin, TX 78746<br>(512) 351-4778 |
| For the Plaintiffs<br>filed within the In<br>re: Johnson & Johnson<br>Talcum Powder Products<br>Marketing, Sales<br>Practices, and<br>Products Liability<br>Litigation: | Lundy LLP<br>By:  KRISTIE HIGHTOWER, ESQ.<br>501 Broad Street<br>Lake Charles, LA 70601<br>(337) 439-0707 |

4

```
For Multiple Talcum      Law Offices of Charles H. Johnson
Powder Plaintiffs:       By:  CHARLES JOHNSON, ESQ.
                         2599 Mississippi Street
                         New Brighton, MN 55112
                         (651) 633-5685


Also Present:            Covington & Burling LLP
                         By:  MARTIN E. BEELER, ESQ.
                         The New York Times Building
                         620 Eighth Avenue
                         New York, NY 10018-1405
                         (212) 841-1000

                         JOSH NAHAS, Dundon Advisers

                         TINA NIX, Pro se
```

1  all, the briefing, the argument.  I'm going to take the matter

2  into consideration.  I want parties to come back at 4:30 and

3  I'm going to give you an answer.  I just want to go back and

4  look at some things.  I had an opportunity to look at things

5  over lunch, but I want to continue to look and analyze some

6  matters and I'll come back.  We can come back at 4:30 and I'll

7  have an answer for you.  Thank you.

8             THE CLERK:  All rise.

9             THE COURT:  Okay.  Folks who have dialed in, we're

10  going to close the line and open it back up at 4:15 and I will

11  not start the ruling until 4:30.  But we're going to close the

12  line and open it back up at 4:15 p.m.  Thank you.

13      (Recess taken at 3:35 p.m.)

14      (Proceedings resumed at 4:32 p.m.)

15             THE CLERK:  All rise.

16             THE COURT:  Okay.  This is Judge Lopez back on the

17  record in Red River Talc.  I want to thank all the parties

18  again for their briefing the arguments of all the parties.  I'm

19  going to just provide my decision.  It requires -- I think it's

20  important for the Court to rule today to allow the next stage

21  of this case to proceed.  I would note this is going to get

22  uploaded, the audio will be uploaded later today for anyone

23  who's interested.

24             So Red River Talc filed a voluntary petition under

25  Chapter 11 in this district.  Creditor, Coalition of Counsel

1    for Justice for Talc Claimants, and the U.S. Trustee for the

2    Southern District of Texas moved to transfer venue to the

3    District of New Jersey.  The movants want this case transferred

4    to New Jersey for the convenience of the party in the interest

5    of justice under 28 U.S.C. 1412 and Bankruptcy Rule 1014(a)(1).

6    The debtor and certain objecting parties, I'll call the ad

7    hocs, disagree and believe the case should remain here.

8           The Court has jurisdiction under 28 U.S.C. 1334.

9    This is a core proceeding under 28 U.S.C. 157(b).  I'd note

10   that the debtor started this case on Friday, September 20th, in

11   this district.  And on the petition date, the United States

12   Trustee for Region 3, which covers the District of New Jersey,

13   filed a motion with the New Jersey Bankruptcy Court asking

14   Judge Kaplan to transfer venue of this case to New Jersey under

15   Bankruptcy Rule 1014(b), but also to stay any proceedings

16   before this Court.

17          The Coalition filed a separate motion to transfer

18   venue with this Court, I believe it was on Saturday, September

19   24 -- September 21st.  So within 24 hours of the case starting,

20   there was a motion to transfer venue filed in New Jersey and

21   then also one filed here in Houston.

22          The Court held an initial hearing on September 23rd.

23   I approved some routine first day relief.  I stayed certain

24   pending litigation, and I placed no restrictions on the

25   Region 3 Trustee's ability to argue the motion before

1  Judge Kaplan.  Judge Kaplan denied the motion on September

2  24th.  Two days later, on September 26th, the U.S. Trustee for

3  this region, which is Region 7, filed a motion to transfer to

4  New Jersey with this Court.  The claimants represented by the

5  Barnes Law Group filed a joinder to the Coalition and the

6  trustee's motion to transfer.  The debtor and a supporting ad

7  hoc committee objected.  The Smith Law Firm also filed a

8  joinder.

9          The movants argue that the convenience of the parties

10  weighs in favor of transferring the case and also that -- but

11  the primary argument is with respect to the interest of

12  justice.  And under this prong, the movants primarily argue

13  that the debtor's engaging in inappropriate forum shopping, and

14  the fact that this is the third filing of a J&J related entity

15  trying to reach a global settlement related to mass tort

16  liability.  The movants argue that retaining this case would

17  harm the integrity of the bankruptcy system as a whole because

18  the debtor's effectively trying to avoid a Third Circuit

19  decision that led to dismissal of prior LTL cases in New

20  Jersey.

21          Lastly, the movants argue that transferring the case

22  would promote judicial efficiency because the Bankruptcy Court,

23  the New Jersey Bankruptcy Court, has experience gained in the

24  prior LTL bankruptcies.  The debtors object, and they argue

25  that neither the convenience of the parties nor the interest of

1  justice compel this Court to transfer the case to New Jersey.

2  They argue that the debtor is located in Texas and that

3  witnesses necessary to the administration can easily appear

4  here virtually.  They don't think it would result in more

5  efficient administration because the New Jersey Court and this

6  Court would be on equal footing concerning many of the issues

7  that are presented in this case.

8       Under the interest of -- under the interest of

9  justice analysis, merely the debtor's choice to file in this

10  district doesn't harm the integrity of the bankruptcy system

11  and that it's not engaging in an improper forum shopping.  The

12  debtor and the ad hocs argue that they have extensive creditor

13  support for the plan and this Court ought to give deference to

14  the debtor's choice in forum and that it would not be an

15  injustice for the Court to retain the case.

16       I would note that interpreting federal statutes and

17  the bankruptcy rules begins with analyzing the text.  Whitlock

18  v. Lowe, 945 F.3d 943, 947, a Fifth Circuit 2019 case, in that

19  case the Fifth Circuit said in matters of statutory

20  interpretation text is always the alpha.  Just leave it.

21       Movants don't argue that venue is improper in this

22  district, but I'm still required to analyze it because it

23  impacts the venue transfer analysis.  Congress gives debtors

24  the right to start a bankruptcy case in several potential

25  venues.  Under 28 U.S.C. 1408, bankruptcy venue is proper in

1  the federal district that is the location of the debtor's

2  domicile, residence, principal place of business in the United

3  States, or principal assets in the United States.

4         A debtor's domicile is often not where the principal

5  place of business is located.  A lot of times principal place

6  of business and domicile may be different than where principal

7  assets are located.  When a debtor's a business entity, the

8  debtor's domicile is the state of incorporation.  The debtor

9  was organized as an LLC in the State of Texas.  That means it

10 can file anywhere in the state.  This venue is proper in the

11 Southern District of Texas.

12        28 U.S.C. 1408 doesn't say who can challenge venue in

13 a bankruptcy case or how it may be challenged.  The answer to

14 that question is found in bankruptcy rules.  Bankruptcy Rule

15 1014(a)(1) provides the procedure for transferring venue.  When

16 a bankruptcy case was filed in the proper district, it says

17 that the Court, on a timely motion of a party in interest or on

18 its own after notice and a hearing, may transfer the case to

19 another district if the Court determines that the transfer is

20 in the best interest of the -- is in the interest of justice or

21 for the convenience of the parties.

22        Bankruptcy Rule 1014 standard mirrors 28 U.S.C. 1412,

23 which says that a District Court may transfer a case, or a

24 proceeding under Title 11, to a District Court for another

25 district in the interest of justice or for the convenience of

1  the parties.

2         So there's two steps to a transfer analysis.  First,

3  the Bankruptcy Court must ask whether the case might have been

4  brought in the destination venue requested, which here is New

5  Jersey, and then, second, whether to transfer the case for the

6  convenience of the parties or the interest of justice.  I've

7  noticed that the rules use the disjunctive or when referring to

8  the reasons for a possible transfer.  So the use of or allows a

9  case to be transferred either for the convenience of the

10 parties or the interest of justice.

11        28 U.S.C. 1412 and the rules also say that the Court

12 may transfer it to another district, thus transferring is not

13 mandatory.  It ultimately lies with the discretion of the

14 Bankruptcy Court.

15        No party disputes that the debtor could have filed

16 this case in New Jersey.  The debtor's voluntary petition lists

17 a principal place of business in New Brunswick, New Jersey, the

18 home of Rutgers University.  So the proposed destination venue

19 works under 1408.  Now the Court considers whether to transfer

20 the case for the convenience of the parties or the interest of

21 justice.

22        The movants bear the burden of proving that the case

23 should be transferred.  CORCO use -- says that it's -- 596

24 F.2d. 1239, a Fifth Circuit 1979 case, says that the standard

25 is preponderance of the evidence.  But even if that burden is

1  met, again, the discretion still lies with the discretion of

2  the Bankruptcy Court.  Remember, Bankruptcy Rule 1014 says the

3  Court may transfer it for these reasons.  The Fifth Circuit has

4  stated that when a bankruptcy case is filed in a proper venue,

5  courts should exercise this discretionary power cautiously.

6  That's at 1241 pincite in CORCO.

7          Let me first consider the trustee's argument that the

8  doctrine of the issue of -- issue preclusion applies here and

9  that a North Carolina Bankruptcy Court's decision to transfer

10  LTL's first case to New Jersey is binding on the debtor.  I'm

11  going to reject that argument for a few reasons.  The North

12  Carolina decision is not binding on me, and I'm the one that's

13  got to make the decision.  Movants still bear the burden of

14  establishing that venue should be transferred, right?  So it's

15  not binding on me, but then the movants still have their burden

16  to establish it under 1014 and 1412, and this Court still

17  retains the discretion.

18          It also fails under collateral estoppel principles,

19  if you think about it, right.  Collateral estoppel doesn't

20  apply unless the facts and the legal standards used to assess

21  those facts are the same in both proceedings, right.  Financial

22  Acquisition Partners LP v. Blackwell, 440 F.3d 278, pincite

23  284, Fifth Circuit 2006.  So applying these rules, the Court

24  finds that collateral estoppel doesn't apply to preclude the

25  debtor from opposing the transfer motions.  But, again, it's

1  the movants' burden anyway.

2         The convenience of the parties issue that the North

3  Carolina Bankruptcy Court determined isn't the same issue

4  facing this Court.  The issue in the North Carolina bankruptcy

5  was to retain LTL's bankruptcy case in North Carolina or

6  transfer it to New Jersey.  The Court found that New Jersey was

7  more convenient than North Carolina.  The Court analyzed the

8  facts before it in 2021, and exercised its discretion.

9         But those aren't the facts that are before me, right.

10  No one even argued about Texas, and the debtor in this case is

11  not LTL.  This debtor has a corporate -- a different corporate

12  and capital structure which creates different connections to

13  the forum here in Texas.  The scope of the proposed liabilities

14  is different too.  So there's no legal basis to apply

15  collateral estoppel here.  The issues at stake are not

16  identical, and the issue of Texas versus New Jersey was not

17  actually litigated, right, the quote/unquote "actually

18  litigated," which is an important term.

19         So let me turn to the CORCO factors that the Fifth

20  Circuit adopted to determine to transfer venue for the

21  convenience of the party.  It said the proximity of creditors

22  of every kind to the Court, the proximity of the bankrupt, of

23  the debtor to the Court, the proximity of the witnesses

24  necessary to the administration of the estate, the location of

25  the assets, the economic administration of the estate, and the

1   necessity for ancillary administration if liquidation occurs.

2   Deference is certainly given to a debtor's initial choice of

3   venue, but Bankruptcy Rule 1014 gives parties a chance to argue

4   for a more convenient district.

5          The first factor of the proximity of creditors of

6   every kind to the Court, here there's tort claimants who are

7   disbursed throughout the country.  The Coalition argues that

8   this factor favors transferring the case because there's over

9   57,000 plaintiffs with talc-related claims in the MDL, which is

10  pending in New Jersey, but that's not determinative.  The Fifth

11  Circuit said to consider the proximity of creditors of every

12  kind to the Court, not the proximity of where the litigation

13  may be pending.  New Jersey may be home to the talc -- more

14  talc-related litigation, but based upon the record before me,

15  there are a lot of creditors who reside in Texas.  Texas is the

16  home to the second percent -- the second largest percentage of

17  claimants in the MDL.  Therefore, this factor doesn't favor

18  transferring the case to New Jersey.

19         The second factor is the proximity of the debtor to

20  the Court.  The Fifth Circuit said in CORCO that the concern

21  here is with the employee's witnesses who must appear in court,

22  not the ones who are on the production line.  That's at pincite

23  at 1248.

24         The focus here is who will or may have to appear in

25  court, and I'll just note I know the debtor's CRO is located in

1   Texas, and the Chief Legal Officer is located in Jersey, but

2   the reality is there's no -- nothing preventing these folks

3   from getting here.  I think they're actually here.  The debtors

4   want to be here, so this doesn't factor a convenience of the

5   parties analysis in transferring the case.

6           The Coalition argues that the operations here are not

7   substantively different than the LTL operations because they're

8   based in Jersey.  But as I mentioned earlier, Red River Talc

9   has a different corporate structure than LTL, and the debtor

10  here's a Texas LLC.  The debtor also oversees operations of a

11  wholly owned subsidiary, Royalty A&M LLC, and that's a Texas

12  LLC.

13          I should also note that some parties refer to the

14  ease of lawyers appearing in court.  Section 1412 and the

15  Bankruptcy -- Bankruptcy Rule require consideration of the

16  location of lawyers.  It said the focus of the convenience of

17  the parties analysis is a consideration of witnesses and the

18  debtor's employees who must appear in court.  And for this I

19  would cite In re Chamber of Commerce of the United States, 105

20  F.4th 297, pincite 306.  That's a Fifth Circuit 2024 case.

21  It's a 1404 analysis, 28 U.S.C. 1404 analysis, but there

22  they're analyzing whether a District Court can transfer a case

23  to another district, but it's for the convenience of the

24  parties and in the interest of justice.  And it's using kind of

25  an intertextual analysis in the way the Court construes it, the

1  convenience of counsel.  The Fifth Circuit did not consider the

2  convenience of counsel in a 1404 analysis about transferring a

3  civil case to another district based on the convenience of

4  party.

5          But regardless, there are national law firms here

6  representing the debtors and major creditor constituencies

7  often appear in this district.  Travel is far less an issue

8  these days.  You know, I would note that parties do have

9  flexibility to appear remotely when afforded by -- when

10 permissible under law.

11         Proximity of the witnesses is kind of the same

12 analysis, right.  The folks who are going to have to appear

13 here today, I suspect don't know exactly who it will always be,

14 but the debtors expressed no concern about the ability to get

15 witnesses here the admin -- necessary to the administration of

16 the estate.  I would note it's Jersey, right, so there's a

17 United hub in Jersey and folks can get on -- fly to the United

18 hub in Houston or get on Southwest or wherever you want to.

19 But I don't see any evidence that the witnesses -- presenting

20 evidence about a specific witness inability to participate in

21 this case, and so it doesn't favor transferring the case.

22         The fourth location is the location of the debtor's

23 assets, right, and the first one is the Royalty A&M.  The

24 second is the funding agreements.  I just note that they are

25 Texas assets, and I'll just leave it kind of there.  But I

1  don't think there's any evidence one way or the other that

2  thinks that there's -- should be moved for the convenience of

3  the parties based upon the location of the debtor's assets.  I

4  don't think Jersey changes the analysis much there.

5          The fifth factor is the economic administration of

6  the estate, and CORCO considered that to be the most important

7  factor.  In CORCO, the Fifth Circuit looked at the location and

8  the accessibility of the books and records.  There, right, the

9  Court found the ability to access the debtor's books and

10  records electronically stored from anywhere, including the

11  forum, weighed against the analysis there.  But any information

12  that the debtor's might require the financial history, the

13  books and records, that's really not an issue much these days

14  in the economic administration of the case.  I may be the last

15  relic of lawyers that got sent to a storage facility in a

16  building somewhere to go review important papers.  It was good,

17  honest work though, I would note.

18          But there is something, and I'll talk about it in the

19  interest of justice about none of the economic efficiencies of

20  having the New Jersey Court consider it.  But I would note that

21  under our case -- case procedures, the hearings are

22  presumptively hybrid and certainly folks have appeared online

23  here with no issues on my part and that will -- that will

24  certainly remain not just for this case, but for any case.  The

25  need for ancillary administration and liquidation doesn't

1    factor one way or the other.

2              So let me turn to the interest of justice, which is

3    where things really -- which is the focus of the movant's

4    arguments.  The standard for the transfer in the interest of

5    justice is flexible and relevant factors include the efficient

6    administration of the bankruptcy estate, judicial economy,

7    timeliness, and fairness.  That's really what this goes to,

8    right, fairness.  Zhang v. Rothrock, I would note that's a 2006

9    Westlaw 213951.  It's a Southern District of Texas, District

10   Court, January 25th, 2006 case.

11             Courts in this district have considered the following

12   in determining whether to transfer is in the interest of

13   justice:  The economics of the estate administration; the

14   presumption in favor of the home court; judicial efficiency;

15   the parties' ability to receive a fair trial; estate's interest

16   in having local controversies decided within its borders by

17   those familiar with its laws; the enforceability of a judgment

18   rendered; and the debtor's original choice of forum.  For that

19   I'm citing Campbell v. Williams, 2015 Westlaw 3657627, Southern

20   District of Texas, District Court case June 12, 2015.  I would

21   also cite Clear Glass Mobile Services, Inc. v. Old Republic

22   Surety, that's 2017 Westlaw, 10295924, Southern District of

23   Texas 2017, District Court case.

24             The movants argue that the case should be transferred

25   in the interest of justice because of forum shopping, the

 1  integrity of the bankruptcy system because of the previous

 2  filings of LTL in other jurisdictions.  Some courts outside of

 3  this district have considered these factors in a venue transfer

 4  analysis under the umbrella of what they've coined the more

 5  abstract measures of the interest of justice.

 6          And you look at the Eclair case that we talked about,

 7  255 B.R. 121, 142 a Bankruptcy Southern District of New York

 8  case, 2000 case.  In that case, the Bankruptcy Court recognized

 9  that the debtor -- or said that the debtor's attempt was really

10  just trying to give the SDNY a try and transferred the case to

11  the Eastern District.  I can almost hear it in Judge Gerber's

12  voice.  It's pretty interesting.  That's what movants say here,

13  and their request is not unfounded, right.

14          This is the third bankruptcy case by a Johnson &

15  Johnson entity trying to resolve mass tort cases through a

16  divisional merger.  After one divisional merger was complete, a

17  non-debtor in LTL then converted into two North Carolina LLCs.

18  Then in October of 2021, LTL filed Chapter 11 in the Western

19  District of North Carolina.  The North Carolina judge

20  transferred the case to New Jersey.  The first debtor was a

21  party to a funding agreement with the debtor, but had not plan

22  on file and there was certainly fierce opposition with little

23  creditor support on its side.  Judge Kaplan declined to dismiss

24  the case for a lack of good faith.  It went to the Third

25  Circuit, and the Third Circuit reversed and said the case had

1    to be dismissed.

2          In April of 2020 -- 2023, excuse me, LTL filed for

3    bankruptcy again in New Jersey.  Applying the LTL Third Circuit

4    precedent, Judge Kaplan dismissed the petition, but urged the

5    parties to continue to talking to reach a global resolution.

6          It looks like in December of 2023, LTL converted to a

7    Texas limited liability company and changed its name to LLT.  I

8    understand movant's arguments that this case feels like LTL

9    wants to give Texas a shot.  I'm also understanding the points

10   raised by the debtor and it's apparently supporting group of

11   claimants that resulted in the filing of a plan in this case.

12   Under the plan, a talc personal injury trust could be funded by

13   a stream of payments totaling about $9 billion payable over 25

14   years.

15         The plan and the disclosure statement were published

16   in June of 2024, and they refer to a proposed corporate

17   restructuring and that LLT had plans to file in Texas.  The

18   debtor claims that garner -- it has garnered over 80 percent

19   approval of that plan.  I'm going to note, and I've said this

20   before but I'm going to say it again, the number of votes and

21   how they were tabulated are heavily contested, from what I can

22   tell, and I'm making no finding today about who's right

23   concerning the actual percentage of creditor support for the

24   plan.  But what is clear is that there are creditors who

25   support this plan and are not in a significant number, from

1  what I can tell, and they support a case being filed in this

2  district, and the Court should consider that in an interest of

3  justice analysis.

4        Following solicitation process, there was another

5  divisional merger on the Texas law, and the gynecological and

6  ovarian cancer claims were attributed to Red River Talc and

7  that's how we find here.  The debtor's only seeking a plan

8  related to ovarian and gynecological cancer claims.

9        Forum shopping concerns may be real here, but I think

10  a bankruptcy judge in the home forum has the same tools to

11  address those concerns.  You know, I think a lot about the

12  arguments and the reasoning in cases like Patriot Coal.  No,

13  the facts of those cases are different, and obviously the

14  motivation of the movants there, right, being the miners wanted

15  the case in West Virginia where they literally dig their hands

16  and go to work every day, and who would -- they thought the

17  Court would understand, the West Virginia Bankruptcy Judge

18  would understand what it meant to be a miner.

19        The debtor may be seeking to avoid Third Circuit case

20  law, right, but it's also true that the debtor may have filed

21  here because creditors voted for it and want the Court to

22  approve a multi-billion settlement that's going to end

23  litigation, right, and put real money in the hands of real

24  people in a way that they're telling me is a lot sooner.

25        I think both sides have the right to argue these

1   issues, but I don't think a motion to transfer venue is the

2   proper vehicle.  I think I should consider this in connection

3   with a motion to dismiss, which is already on file, and can be

4   adjudicated by this Court, and also in the context of plan

5   confirmation.

6          I do find some support for my position in a recent

7   Fifth Circuit decision involving another 1404 analysis.  This

8   is a different case, same case name, but a different cite.

9   This is another In re Fort Worth Chamber of Commerce, 100 F.4th

10  528, pincite 539.  It's a Fifth Circuit 2024 case.  In a

11  concurrence, a Circuit Judge said he couldn't find any support

12  for forum shopping considerations in the Supreme Court or Fifth

13  Circuit precedent on the convenience of the parties or interest

14  of justice analysis.

15         I understand the legal argument and the passion of

16  movants about the integrity of the bankruptcy system.

17  Patriot Coal talks a lot about that.  I note that bankruptcy

18  case have been around for a long time and so has the Bankruptcy

19  Code.  I think about Johns Manville.  I think about Enron which

20  was strongly opposed in these parts of town.  You can actually

21  see the old Enron building right outside the windows of this

22  Court.  I think about decisions that had to be made on

23  on-the-spot cases like General Motors and how they were filed.

24         There's certainly strong disagreements in this case.

25  This case might ultimately get dismissed.  A plan with

1 potential overwhelming creditor support, if that's what it ends

2 up being, may also get confirmed.  The U.S. Trustee tells me

3 there may be strong confirmation issues, so does the Coalition.

4 I think everything's going to get addressed at the proper time.

5 But a decision about transferring or not transferring this case

6 is not going to threaten the integrity of the bankruptcy

7 system, just as it hasn't in very -- in hardly fought motions

8 to transfer venue in other cases.

9        Let me turn to the interest of factors used by the

10 courts in this district.  The economics of the estate

11 administration in a lot of ways overlaps with the convenience

12 of the parties' analysis about this point, but I would note the

13 Fifth Circuit said this was the most important and I've got to

14 take that seriously.

15        As I've noted, for the reasons that I've talked about

16 in the convenience section, I think the economics of the estate

17 administration don't favor transferring a case, certainly not -

18 - doesn't rise to the level where the Court should transfer it.

19 I think this case can be and should be decided on a -- not for

20 the sake of rushing, but with purpose.  We ought to get to the

21 hard questions, as I've been saying from day one.  The second

22 factor, the presumption for the home court and the seventh

23 factor, the debtor's choice of forum, both favor retaining the

24 case.

25        Let me turn to the judicial efficiency factor, which

1  I think also kind of overlaps in a way with the estate

2  administration.  The movants argue that this factor supports

3  the transfer motions because Judge Kaplan presided over two LTL

4  filings and is well versed in the J&J corporate transactions,

5  financing arrangements, and talc-related bankruptcy claims, as

6  well as familiar with the witnesses and other parties in this

7  case.  There's no question Judge Kaplan is in my mind a

8  brilliant judge and has an intimate and vast knowledge of the

9  prior cases, but he also recognized that we have in this case

10 clearly different debtors.  We have different parties involved,

11 and I agree with Judge Kaplan.  I know just as much -- I know

12 just as much about this case and this plan as any other judge

13 in the country.

14        I also think about the extensive involvement in the

15 MDL and whether the New Jersey District Court has extensive

16 involvement in the MDL, but when you look at the text, right,

17 that's not really a relevant consideration.  And, again, I

18 think this bankruptcy case is different, and I'm stressing this

19 because here there's a prepackaged plan.  And I'm saying it,

20 but really that just means that plans were -- folks were

21 solicited pre-petition in accordance with Section 1126 --

22 excuse me, 1125(g) of the Bankruptcy Code in hopes that they'd

23 been accepted and deemed admitted on the same basis under

24 Section 1126(b) of the Bankruptcy Code.  There certainly is an

25 ebb and flow to what we call pre-packaged cases, but a pre-pack

1  just means you solicited votes pre-bankruptcy.  Once you file,

2  everything becomes on the table.

3           And I don't think -- there was never a prior case --

4  never a prior plan for any judge to consider.  Now it looks

5  like some folks who oppose the LTL debtor cases are now

6  apparently supporting the plan in this case.  There's also

7  different types of claims, or I should say less -- the scope of

8  the types of claims are to be addressed.  That's not to say

9  that the types of claims that are at issue here -- it's almost

10  -- I say it with all -- I'm using the word claims here.  There

11  are lawsuits and there are claims and I don't want to lose

12  sight that there are real people here behind them, and I -- and

13  they're going -- I don't mean to make light on them and I don't

14  mean to distinguish between mesothelioma or lung cancer claims

15  from ovarian and gynecological claim -- cancer claims.  I'm

16  only saying that this plan that is proposed proposes to treat

17  those claims and apparently has creditor support -- claimant

18  support, but I don't mean to make light or in any way

19  disrespect or in any way show any -- I hope it doesn't come

20  across as insensitive that I'm referring to them as claims and

21  not recognizing that there are people behind those claims who

22  want this settlement and who may want to put real money in the

23  pockets or leave something behind for someone, and those who

24  believe that their cases should be tried in the MDL system.

25           I think the New Jersey Court and this Court would be

1  on equal footing as to the consideration of this plan because

2  those cases never -- those issues never reached those stage --

3  that stage in those cases.  Let me just also say for the record

4  that particularly in these types of cases there's sometimes an

5  attempt, and I'm not saying it was done here, I'm just stating

6  it for the record, to match MDLs against bankruptcy.  In my

7  eyes, that's a false dichotomy.  I don't see competition there.

8  I leave that to the academics.  There've been mass tort cases

9  and there are MDLs, and they've been around for decades.

10 They're different tools authorized under different statutes.

11         I leave those kind of debates for lawmakers,

12 policymakers, academics.  Bankruptcy affords certain debtors

13 tools to use in bankruptcy and they can avail themselves of

14 those tools in bankruptcy.  There's an MDL system that's out

15 there, and partis can avail themselves to the MDL system as

16 well.  I don't think it's a role for a judge to say which one

17 is better or not.  I think my job is to rule on matters that

18 are before me based upon the statutes that I have and the

19 jurisdiction that's been afforded to me by Congress.

20         It does go to the parties ability to receive a fair

21 trial.  I want to assure everyone that you're going to receive

22 a fair trial in front of me.  I'm committed to a legal process

23 that's focused on text, the law, case law, and evidence.  It's

24 just that simple.  I'm focused far more on the process than the

25 outcome.  So to me, the ability to receive a fair trial doesn't

218

1  favor transferring the case.  I'm confident that I can follow

2  the process and let the answer fall where it may.

3       But I want to say this to you, I have no intention in

4  staying in here for the sake of staying in Chapter 11.  This

5  case is going to be dismissed or it's going to be confirmed,

6  and let's find out if the debtor's entitled to a 524(g)

7  injunction or not.  I don't intend to needlessly stay in

8  Chapter 11.  There's a plan on file.  Let's see if it works and

9  if this case is going to go back to the MDL system, then let's

10  schedule dismissal and confirmation on a dual track.  Let's

11  just figure it out, get one answer.

12       The State's interest in having local controversies

13  within its borders, I know that one of the issues here is the

14  use of Texas divisional mergers.  But I do agree with counsel,

15  they're -- these cases have been filed in multiple

16  jurisdictions across the country.  What I'll say is I don't

17  think it favors transferring the case for that reason, but I do

18  note that this -- I think this Court is certainly familiar with

19  them, and I think the concerns about what happened in the

20  course of a year in the matters before the New Jersey Court, I

21  don't intend to kind of do that.  I think you got a plan on

22  file.  If it works, it works.  If it's not, then we'll figure

23  out.  You know, you're all going to -- if the case gets

24  dismissed, you'll go back and do other stuff.  But if not, then

25  if the case is -- plan is confirmed then there ain't a whole

1  lot for me to do.  I just think we ought to get to these issues

2  and get on them.

3       I do understand the concerns that the parties have,

4  but there's a lot of -- a lot of motion that could be filed

5  during the interim, I'm not really interested in.  I want you

6  to take up the matters that are truly before me.  Let's

7  schedule these issues.  Discovery needs to happen.  I got it.

8  And I don't think you all need six months of discovery.  I

9  think you all know what you got to do, and I got it.  There's

10  voting issues and you're going to have to go take that up and

11  both sides want to tell their story.  Well, let's figure it

12  out.  Let's put people on the stand and let's figure out what

13  the evidence shows.  Evidence matters in every case and I -- it

14  just does.

15       Anyway, the enforceability of any judgment rendered,

16  I don't think it was really evident, but I don't think the

17  West -- the North Carolina bankruptcy decision is binding on me

18  in any way.  So that being said, again, I go back to the

19  statute that says may.  I'm going to decline to exercise any

20  discretion that I have to transfer this case to New Jersey, but

21  I don't intend to delay long.  I think the parties, we got to

22  take up soon.  I know that there's a number of matters that

23  need to be taken up in short order, and I intend to take them

24  up.

25       I'm really stressing to the parties statutes, the

1  words that they use really matter.  The evidence really

2  matters.  The debtors filed a pre-pack.  Let's take the issues

3  up that need -- let's answer the hard questions.  I stand ready

4  to answer them, and I don't know the answer to any of them.

5          What makes this decision, and you can hear it in my

6  voice, is what you're hearing is just I -- bankruptcy judges,

7  and I'm not the only one, you know, there's real people behind

8  it who really want a settlement and who really want money and

9  there's some folks who really want their day in court in

10  another jurisdiction, and I'm feeling it all and the weight of

11  it all.  But I'm confident I reached the right decision based

12  upon the evidence that is presented to me and the exercise of

13  the jurisdiction that I have here, and I thank all the parties.

14          Let's figure out where this goes next, and you all

15  can tell me.  I'm just going to enter a short order saying for

16  the reasons stated on the record, you know, the old one-liner

17  and then this will be uploaded for the parties here.  I don't

18  know where we go next, but I want to get there, and I got --

19  we're in that kind of time of year where folks -- it gets hard

20  to kind of schedule stuff because of holidays coming up.  But

21  I'm telling you, and I think -- I don't want to do the Sunday

22  thing anymore.  That was a one-timer, but I will -- I'm serious

23  about if we've got to start early and go late.  I'm going to

24  make the time because I think this case needs answers and

25  resolutions and the longer we don't answer the questions, then

1  I think the longer I start to get concerned that, you know,

2  this is going to drag into 2025 with no answers.  And I think

3  we -- you need answers from the Bankruptcy Court, and I intend

4  to carefully consider them.  I don't want to go fast for the

5  sake of going fast, but we need to be moving with purpose.  And

6  I think that's the way that I would -- that I'd say it.

7          So you've probably -- that's probably enough of me

8  talking for today.  I don't know when it makes sense to have a

9  status conference or talk more or what you all want to do, but

10  I'll enter that short order today and give parties an

11  opportunity to think about what I said and kind of see where we

12  go.  Counsel?

13          MR. GORDON:  Thank you, Your Honor.  Greg Gordon

14  again on behalf of Red River.  One thing I wanted to raise

15  today, if I could, is you had entered back at the -- I think in

16  connection with the first day hearing, that administrative

17  order sort of holding everything in place, and that was in --

18  and ask you know, we filed a request for preliminary injunction

19  with a temporary restraining order request as well.  And the

20  question I would have for Your Honor today, and I realize it's

21  late, is there -- is it possible we could get a hearing on the

22  TRO on the first part of next week?

23          THE COURT:  I will make it happen.  We will -- yes.

24  What the day is right now, I probably need to look to the

25  person over there to tell me and to -- I'm probably going to

**Exhibit B**

```
 1                    UNITED STATES BANKRUPTCY COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3                                )  CASE NO: 24-90505-cml
                                  )
 4    RED RIVER TALC LLC,         )  Houston, Texas
                                  )
 5             Debtor.            )  Tuesday, November 12, 2024
                                  )
 6                                )  1:15 PM to 8:01 PM
      -----------------------------)

 7

 8                              TRIAL

 9         BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                UNITED STATES BANKRUPTCY JUDGE

10

11    APPEARANCES:

12    For the Debtor:        GREGORY GORDON
                             DAN PRIETO
13                           Jones Day
                             717 Texas, Suite 3300
14                           Houston, TX 77002

15                           ALLISON BROWN
                             Skadden Arps Slate Meagher &
16                           Flom LLP
                             One Manhattan West
17                           New York, NY 10001

18    For the U.S. Trustee:  JAYSON RUFF
                             LINDA RICHENDERFER
19                           United States Department of Justice
                             515 Rusk Street, Suite 3516
20                           Houston, TX 77002

21    For the Ad Hoc Group   KRIS HANSEN
      Of Supporting Counsel: SCHLEA THOMAS
22                           Paul Hastings LLP
                             600 Travis Street
23                           58th Floor
                             Houston, TX 77002

24

25
```

```
 1    For Coalition of Counsel MELANIE CYGANOWSKI
      For Justice for Talc    ADAM SILVERSTEIN
 2    Claimants:              SUNNI BEVILLE
                              Otterbourg Steindler Houston &
 3                            Rosen, P.C.
                              230 Park Avenue
 4                            New York, NY 10169

 5                            PETER C. D'APICE
                              SANDER L. ESSERMAN
 6                            Stutzman Bromberg
                              2323 Bryan Street
 7                            Suite 2200
                              Dallas, TX 75201
 8
                              MICHAEL WINOGRAD
 9                            Brown Rudnick LLP
                              7 Times Square
10                            New York, NY 10036

11    For Century Indemnity   JORDAN ANTHONY HESS
      Company:                Plevin & Turner LLP
12                            1701 Pennsylvania Ave. NW
                              Suite 20006
13                            Washington, D.C. 20004

14    For Talcum Powder       ALEX GOLDSTEIN
      Claimants:              Goldstein Greco PC
15                            2354 Wehrle Drive
                              Buffalo, NY 14221
16
      Claimants Represented   JOHN R. BEVIS
17    by Barnes Law Group LLC: Barnes Law Group
                              31 Atlanta St.
18                            Marietta, GA 30060

19    ALSO PRESENT:           RICHARD MIZAK, Financial Advisor to
                              the Debtor
20
                              LENNY PARKINS, Parkins Review Firm
21    Court Reporter:         UNKNOWN
      Courtroom Deputy:       UNKNOWN
22    Transcribed by:         Veritext Legal Solutions
                              330 Old Country Road, Suite 300
23                            Mineola, NY 11501
                              Tel: 800-727-6396
24
      Proceedings recorded by electronic sound recording;
25    Transcript produced by transcription service.
```

A33

1    show up on the weekend, we'll be here.  We'll figure

2    something out, but that'll be my ruling.  Why don't we take

3    a -- I'll start at 3:50 and we'll take a -- is it the motion

4    to transfer -- the reconsideration?  We'll take that up.

5    Why don't we start at 3:50 and then we'll from there move

6    into the FCR related motions and we'll go from there.  Thank

7    you.

8            (Recess)

9            THE COURT:  Be seated.  All right.  Let's just

10    see.  Before we get started, Zilde, keep an eye out for the

11    glare.  Just make sure no one is getting it in the eye.

12    Back on the record in Red River Talc.  The Court will now

13    consider what is listed as Agenda Item Number 4, the amended

14    motion of the coalition.  No.  That's not it.  Coalition

15    Number 4.  It's Number 3.  I apologize.  The motion of the

16    coalition under Bankruptcy Rules 9023 and 9024 to alter or

17    to reconsider the order denying the motion to transfer venue

18    was filed at Docket Number 321.  Good afternoon, Ms.

19    Cyganowski.

20            MS. CYGANOWSKI:  Good afternoon, Your Honor.  For

21    the record, Melanie Cyganowski, Otterbourg, for the

22    coalition.  Your Honor, I rise today in connection with the

23    venue reconsideration motion, but before I proceeded

24    further, I wanted to take a few moments, if the Court would

25    indulge me, to put several factors in perspective that I

**A34**

1    think bear on the motion for reconsideration.

2         THE COURT:  Okay.

3         MS. CYGANOWSKI:  We have heard much about the

4    proposed settlement plan, the plan of reorganization, and

5    how the members of the coalition in particular have been

6    chastised for not supporting the plan.

7         What has not been shared with the Court to date,

8    and I wanted to just point out a few points that I think are

9    important, is for example -- and these are just examples --

10   not one nickel is going to be paid to claimants until at

11   least the circuit -- whether it's the 5th, the 3rd, or

12   whichever circuit -- has determined all pending appeals.

13        We all know that this process will take years, and

14   I point this out because there should be no illusion,

15   although we've seen it in papers from many, that quote

16   claimants are going to be paid quickly as a reason for

17   supporting the plan.  So, it also raises the question why

18   the coalition should be vilified for wanting to perhaps

19   change this material term.

20        Another point that hasn't really been focused on

21   as yet is that no one currently knows how much any claimant

22   will receive.  Search as you might, there is no

23   quantification other than broad ranges of what ailments will

24   be entitled to what funding amounts, or what a point is

25   worth, or what is being projected for current or future

**A35**

1    claimants.

2            Another point is that no one yet can make any

3    assessment as to whether the proposed sum of eight to nine

4    or ten billion, which admittedly is a very, very large

5    amount, will be paid, or the fact that it will be paid in

6    the short term, because according to the papers it's going

7    to be paid over 15 years.  Is that sufficient?  Is that

8    fair?

9            And a final point I'd like to point out is that

10   the plan and the settlement show that J&J and the Debtor

11   have a unilateral right to walk if certain terms are not

12   satisfied.  One of these terms includes the debtor's failure

13   and ability to obtain a release in favor of the non-debtor

14   affiliates and other parties under Section 524(g) of the

15   code.

16           Since 524(g) of the code, by its terms, does not

17   extend its injunctive relief for a discharge to direct

18   claims asserted against non-debtors, whether that be Kenvue

19   or J&J or any of the hundreds of retailers, it is puzzling

20   that once again the coalition members are chastised for

21   calling this overreach out and pointing out its illusory

22   nature.

23           Now, I appreciate, Your Honor, that none of these

24   issues are directly relevant to the venue reconsideration

25   motion, but they are relevant to the Court's consideration

**A36**

1    of the ongoing dynamics of the case, dynamics which the

2    Court focused upon in its questioning of counsel during the

3    last hearing and in its decision concerning venue.

4        I listened to the hearing.  Unfortunately, I

5    couldn't be here that day.  I also reviewed the transcript

6    and it is abundantly clear to me that the Court viewed the

7    coalition as pushing for New Jersey in order to better

8    position the case for dismissal.  And the Court concluded

9    that it believed that this case should have a chance to

10   succeed and therefore should remain in Texas.

11       In coming to this conclusion, the Court rejected

12   the coalition's arguments that integrity of the judicial

13   process should be given highest priority.  Our argument on

14   reconsideration is simply this, that integrity of the

15   bankruptcy process does matter, and insisting that the

16   Debtor perform consistent with its fiduciary duty is

17   paramount.

18       We can pretend and accept the Debtor's paradigm

19   that LTL 1 and 2 and Red River are different, that they're

20   different companies, there's different assets, there's

21   different liabilities, that there are different creditors.

22   And if we do that, the Court's holding that venue is proper

23   here in Texas makes logical sense.

24       But this paradigm upon closer examination quickly

25   fails.  We cannot ignore that the entire bankruptcy,

**A37**

1 including the company, its funding, composition of the

2 creditors, the liabilities, the composition of the board,

3 have all been fabricated and artificially constructed.  Red

4 River is not a preexisting operating company.  It was

5 constructed, frankly, much like a Lego project.  It

6 certainly surprises no one that perhaps J&J finally got it

7 right after three unsuccessful attempts.

8    As I reread Mr. Gordon's remarks at the venue

9 hearing, he steadily checked off each of the boxes needed to

10 show that this case should stay in Texas, beginning with its

11 reconstitution by way of a second divisive merger.  But

12 bankruptcy is not a platform for building Lego sets.  It is

13 a judicial forum for honest debtors to come to Court to

14 reorganize their debts consistent with the code.

15    And the reason that the coalition sought

16 reconsideration is that on the very next day, the very next

17 day after the hearing and decision on the venue, Red River

18 filed papers, which obviously had been in process before

19 then, with the United States Supreme Court, in which it

20 unilaterally substituted itself for LTL 2 as the applicant

21 appellate party.

22    Nowhere in its application does it state that Red

23 River and LTL 2 are different companies with different

24 creditors, with different liabilities.  Rather, it

25 unilaterally claims that as the corporate successor, it

**A38**

1    steps into the shoes of LTL 2 for all purposes.

2            This means that, although J&J is now -- the Debtor

3    is now saying it's hypothetical, that if LTL, Red River,

4    were successful before the Supreme Court, received cert, won

5    reversal of the Third Circuit decision, the New Jersey case

6    would then be revived in full force and there would then be

7    two competing bankruptcy cases in two jurisdictions with the

8    same Debtor.

9            The bottom line is that integrity of the process

10    does matter.  The coalition has no crystal ball as to

11    whether the Red River bankruptcy will survive in either a

12    New Jersey or a Texas court.  The coalition is simply

13    seeking the best resolution it can achieve for its

14    claimants, whether it's here, New Jersey, or outside a

15    bankruptcy forum altogether.

16            So for these reasons, Your Honor, we respectfully

17    request reconsideration of the venue's motion.  We stand on

18    our prior papers and our prior arguments.  Red River should

19    not be rewarded for building different Lego sets whenever it

20    feels it needs to, to suit a particular purpose.  Integrity

21    does matter, and I believe that that constitutes sufficient

22    cause for this Court to reconsider its decision.  Thank you.

23            THE COURT:  Thank you.  Anyone else who supports

24    the relief request and who wishes to be heard?

25            Okay.  Mr. Gordon?

**A39**

1          MR. GORDON:  Thank you, Your Honor.  Greg Gordon

2     on behalf of the Debtor.  This is very unusual for me

3     because I feel completely at a loss of words in terms of how

4     to respond to this, because to me what Ms. Cyganowski is

5     basically saying or doing, is she's conceding that her

6     motion has no basis.  She's asking Your Honor -- or the

7     coalition, as I understand it, is asking Your Honor to

8     reverse your ruling based on a fact that is not a fact, and

9     the fact is that LTL and Red River are the same entity.

10          That's the premise on which the motion was filed.

11     That's the premise on which she's asking for that relief

12     today, and she's asking for that, the coalition is asking

13     for that even though they don't take that position.  They

14     know that the entities are different.  We've never taken

15     that position.  They cited at one point the testimony of Mr.

16     Kim.  He never said that.  She's citing the motion that we

17     filed in the Supreme Court.  That doesn't say the entities

18     are the same, and she admitted it.

19          It said that Red River was acting as a successor.

20     That's a different entity.  It is a successor by virtue of

21     the transaction, so from our perspective, there's just no

22     basis for this request.  There's no error in material fact.

23     There's no change in intervening law.

24          There's no manifest error of law or fact.  None of

25     the -- none of those requirements are met, and what I heard

1    mostly was a defense, an effort at defending the coalition's

2    actions in this case, and they're obviously entitled to do

3    that.  You know, they're entitled to try to defend why

4    they're literally opposing everything in this case, but that

5    has nothing to do with the motion before Your Honor, and I

6    would submit, Your Honor, there's just absolutely no basis

7    to reconsider your ruling.  I'd be happy to answer any

8    questions Your Honor might have about this, but that's all

9    I've got.

10          THE COURT:  The only question I have is what's

11   your response to the filing of something the day after I

12   ruled on a motion to transfer venue?  That seems -- that's

13   the crux of your argument.  What's the direct response to

14   that?

15          MR. GORDON:  That was the deadline.

16          THE COURT:  But are you seeking (indiscernible)?

17          MR. GORDON:  We are not, and we tried to be clear

18   about that in our response.  At the time we filed that, it

19   wasn't clear what the schedule was going to be in this case,

20   and it was simply an effort to preserve rights.  Motions to

21   dismiss had been filed.  We hadn't had a hearing with Your

22   Honor yet on how those would be handled or when they would

23   be handled.  It was simply an effort to preserve rights.

24          And I made clear once this motion was filed, as we

25   said in the pleadings, I called Mr. Molton.  I asked him to

1  withdraw the motion on the basis that we would not be

2  pursuing that appeal.  We didn't file anything substantive.

3  It was just an effort to preserve rights to extend the

4  deadline, and I told him, based on the schedule that had

5  come down shortly after we filed that, we would not be

6  pursuing it further, but he declined to do that.

7        THE COURT:  Anyone else wish to be heard?

8        MR. HANSEN:  Good afternoon, Your Honor.  Kris

9  Hansen with Paul Hastings on behalf of the Ad Hoc Committee.

10 Your Honor, we support the Debtor, and we oppose the relief

11 sought by the coalition.  And guess we would just reiterate

12 the points that we made when we were here in the context of

13 the initial venue transfer motion, and point out to the

14 Court that we have a calendar that's going to take us to the

15 trial at the end of January and the beginning of February,

16 and that's something that we and all the parties here look

17 forward to.

18        And with -- we agree with the Debtors that the

19 standards have not been met that would validate the request

20 for reconsideration, and we really urge the parties here, I

21 think as Your Honor did earlier in connection with the level

22 of pleadings that have been filed in the case, to try to

23 clear out as much as we can to try to get to that trial date

24 so that you can actually take up the question of

25 confirmation and the motion to dismiss.

**A42**

1          But with respect to this motion, it seems to us to

2     be yet another tactic in the context of the case, and we

3     think the Court should deny it.  Thank you, Your Honor.

4          THE COURT:  Thank you.  Does anyone else wish to

5     be heard?

6          I was just checking to see if anyone online wished

7     to be heard.  Just one moment.

8          So, before the Court is a motion to reconsider, a

9     motion to transfer venue to the District of New Jersey.  The

10    Court has considered the argument, and I would note that the

11    basis for the relief requested is under Rule 9023 and 9024,

12    which would incorporate Federal Rules of Civil Procedure 59

13    and 60.  It's a little -- it's only for real bankruptcy

14    folks who know that Rule 59 is 9023 and 60 is 9024.

15         Rule 59(a)(2), Federal Rules of Civil Procedure,

16    which are incorporated into 9023, says that after a non-jury

17    trial, the Court may open a judgment if one has been

18    entered, take additional testimony, amend findings of facts

19    and conclusions of law or to make new ones, and to direct

20    entry of a new judgment.

21         Look at the case law in the Fifth Circuit and

22    you'll -- it's really -- you've really got to look to see if

23    it's reasonably clear that, you know, prejudicial error has

24    crept into the record and there's a substantial injustice to

25    -- has not been done or the burden of -- and the burden

**A43**

1    would rely -- would rest with the coalition here.

2         Rule 59(e) also provides that a party can file to

3    amend a judgment, and that's under Rule 59(e), calls into

4    question the correctness of a judgment, and you look at

5    cases like In re Transtexas Gas Corp. 303 F.3d 571 (5th Cir.

6    2002); Rule 59(e) is correctly invoked, as the Fifth Circuit

7    has said in that case, to correct manifest errors of law or

8    to present newly discovered evidence.

9         To prevail on the motion, they've got to establish

10   that an intervening change of law, the availability of new

11   evidence not previously available, or the need to correct a

12   clear error of law, correct manifest error of judgment.  In

13   re Benjamin Moore and Company 318 F.3d 626, pincite 629 (5th

14   Cir. 2002).

15        Rule 59(e) motion -- excuse me, Rule 59 motion,

16   it's really not -- the Fifth Circuit has said, it's not kind

17   of the vehicle to go make new theories or to kind of rehash

18   arguments that could have been offered or raised before the

19   entry of the judgment.  Rule 60 would also apply for seeking

20   a new trial.  It really -- I think, for there, you've got to

21   also have real good reasons, manifest injustice, if you

22   wanted to or matters that would justify a new trial under

23   Rule 60.

24        The Court has considered the arguments.  I -- the

25   ruling took up or addressed arguments under Rule 28 USC 1408

**A44**

1    and then Bankruptcy Rule 1014(a)(1), which provides the

2    procedure and when things can be challenged.  You kind of

3    then go and you look at Fifth Circuit case law, 1979 case,

4    CORDO, which has been around for quite some time.  I'm going

5    to deny the motion.

6         I think -- I don't think anything that has been

7    argued today causes me to change the decision I made and for

8    why I made them, and I made them after careful review of the

9    standards that the Fifth Circuit told me to.  I don't think

10   collateral estoppel applied there.  I don't think -- I think

11   my analysis of the CORCO factors was there, and I don't

12   change anything.

13        I take sleight -- I think Ms. Cyganowski framed it

14   as if the Court didn't care about the integrity of the

15   process.  I just -- I hope the decision that I made because

16   of the answer that I gave -- doesn't mean one way or the

17   other, and it shouldn't speak to integrity of the process or

18   that process matters, or the integrity, the integrity of the

19   Court doesn't matter.

20        I think as a bankruptcy judge, I'm required to

21   apply the law faithfully as I see it and let the answers

22   fall where they may, and that's what I think I did.  I

23   didn't speak to -- I think that speaks to integrity of the

24   process.  I got it; this case is different than others.  It

25   may ultimately get confirmed.  It may ultimately just get

1  dismissed.

2          Those questions are for another day, but the

3  answer will still rest upon a solid -- whether the debtor is

4  entitled to confirm the plan on the terms that it wants, and

5  those are all kind of really hard questions that we're going

6  to have to take up and -- but they'll be answered based upon

7  the text of the statute, and the answers, the guidance from

8  Fifth Circuit case law that I'm bound by and analysis of the

9  law based upon the evidence.

10          I won't drive to an answer just because it's

11  popular or just because people want me to do it.  That

12  doesn't mean -- it's just going to -- the answer will be the

13  answer, and people will have whatever rights they have.

14  Whether someone ultimately agrees or disagrees, they will

15  have the right to seek review of whatever decision the Court

16  makes.

17          My job is to try to do my job to the best of my

18  ability and to give the right answer that I think is based

19  on the evidence in the law and a strict textual analysis.

20  And I don't know what those answers will be in the future,

21  but I stand by the answer that I gave, that -- connection

22  with the motion to transfer venue.  I stand by every word

23  that I made in that decision, and nothing has caused me to

24  think differently about that answer, so I respectfully stand

25  by it.

```
 1              I appreciate the arguments.  Cyganowski and I do
 2   agree on one point, and that is whether someone is a
 3   majority or someone is a -- the word majority here,
 4   minority, is really kind of not the right way, I think, to
 5   frame it.  It's, parties have rights, and even if it was
 6   just one person that came in here and thought they had the
 7   right and they're right on the law, then they win because
 8   that's the right answer under the law based on the facts.
 9              And so, just because there's eight people standing
10   on one side and one standing on the other side doesn't mean
11   that the one loses.  The one may win if they're right on the
12   facts and the law.  That is my job.  And so, I do agree that
13   efforts to try to characterize the coalition as doing
14   something wrong because they're objecting, I think they're
15   entirely within their rights, whether there were a hundred
16   of them and they were in the majority and the Debtor was in
17   the minority based upon numbers that are appearing before
18   me, doesn't drive the right answer.
19              Text drives the right  answer.  The law, what
20   Congress has said and then the way they said it and where
21   they put the commas and where they -- what they've done and
22   the words that they've added and the words that they didn't
23   add and what the Fifth Circuit has said and what I'm bound
24   by, that's what drives the answer.  And bankruptcy courts in
25   some respects, sometimes Congress has spoken, sometimes
```

1    there's answers like cause, and sometimes there are factors

2    that the Fifth Circuit causes me to do and my goal is to try

3    to apply it faithfully based there.

4         But just because someone is in the "majority,"

5    just because someone is "in the minority," that doesn't mean

6    they need to be labeled in a certain way.  That being said,

7    it doesn't also mean that the other side then gets to say

8    that, we're just dealing with Legos.  Again, tone matters.

9    I think everyone is best served by just, for me, let's just

10   stick to the facts and the law and let's see where things

11   go.  So the motion is denied.  I'll enter a short order

12   denying it for the reasons stated on the record.

13        Let's turn to the FCR motions.

14        MR. GORDON:  Your Honor, Greg Gordon again on

15   behalf of the Debtor.  We did have a conversation with the

16   other side about how to handle this because there's multiple

17   motions, as Your Honor knows, and it was agreed that the

18   Debtor would go first.  But I think before that --

19        THE COURT:  It is your motion, right?

20        MR. GORDON:  With respect, it's motion to appoint.

21   Sorry I wasn't clear --

22        THE COURT:  No, no, no, just making sure.

23        MR. GORDON:  Yeah, but the thought was that we

24   would go ahead and have the testimony, if Your Honor would

25   permit that, that Ms. Ellis would be put on the stand first.

**A48**

**Exhibit C**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

In re:

**RODERICK O. FORD,**                    Case No. 1:22-cv-237-AW-MAF

**Debtor.**

_____/

## <u>ORDER DISMISSING APPEAL FOR LACK OF JURISDICTION</u>

Debtor Roderick Ford appealed the Bankruptcy Court's order regarding transfer to the Middle District. ECF No. 1. I directed Ford to show cause why the appeal should not be dismissed for lack of jurisdiction. ECF No. 2. Having considered Ford's response, I now dismiss the appeal.

Ford does not contend he had leave to file an interlocutory appeal. *Cf.* 28 U.S.C. § 158(a)(3). His sole argument is that he appeals from a "final order." *See id.* § 158(a)(1) (granting jurisdiction over appeals "from final judgments, orders, and decrees" from bankruptcy court). But the transfer order was not a final order.

Ford does not dispute that a district court order transferring a civil case under 28 U.S.C. § 1404(a) is a nonfinal, nonappealable order. *See Middlebrooks v. Smith*, 735 F.2d 431, 432-33 (11th Cir. 1984). But he contends that is irrelevant here because § 1404(a) "does not govern 28 U.S.C. § 158(a)(1)." ECF No. 3 at 3. But the question with § 158(a)(1) is whether an order is final, and that is the same question with a § 1404(a) order. *Cf.* 28 U.S.C. § 1291 (granting courts of appeals jurisdiction

1

of appeals from "final" district court decisions). So for the same reasons that a § 1404(a) transfer is nonfinal, the transfer here is nonfinal.[1]

It is true that the finality determination can be different in bankruptcy than in ordinary civil litigation. "In short, the usual judicial unit for analyzing finality in ordinary civil litigation is the *case*, but in bankruptcy, it is often the *proceeding*." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020) (cleaned up) (emphasis added). In bankruptcy, one can appeal from a final order in a *proceeding*, even when the overall *case* continues. *Id.* A proceeding could be one of many "individual controversies" that "would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015).

Notwithstanding Ford's argument, the transfer decision did not constitute a final order in a separate proceeding. No matter how Ford defines the relevant proceeding, the transfer order "leaves the parties' rights and obligations unsettled and therefore cannot by typed final." *Ritzen Grp.,* 140 S. Ct. at 588 (cleaned up). Indeed, "[i]t is hard to see how any order could be less 'final' than one which merely transfers an action for trial from one district to another in the federal judicial system,

---

[1] The bankruptcy chapter does have its own transfer statute, but its language is essentially the same as § 1404(a). *Compare* 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."), *with* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action . . . .").

whether the transferee district is in the same circuit or a different one." *Stelly v. Emps. Nat. Ins. Co.*, 431 F.2d 1251, 1253 (5th Cir. 1970); *see also Dobard v. Johnson*, 749 F.2d 1503, 1506 (11th Cir. 1985) ("[C]ourts have fairly consistently held that transfer orders brought under other statutes are not generally final orders for the purpose of appeal.").[2]

The nonbinding district court cases Ford cites don't change this analysis. ECF No. 3 at 2-3. Some dealt with whether a bankruptcy court had authority under the Bankruptcy Amendments and Federal Judgeship Act of 1984 to order transfer. *See, e.g.*, *Storage Equities, Inc. v. Delisle*, 91 B.R. 616, 618 (N.D. Ga. 1988); *In re Matter of Whilden*, 67 B.R. 40, 41-42 (Bankr. M.D. Fla. 1986). And at any rate, none shows persuasively that the transfer order was a final order.

\* \* \*

Because neither the transfer order nor the order denying the motion to vacate it is a final order, this court lacks jurisdiction to hear Ford's appeal. The clerk will enter a judgment that says, "The appeal is dismissed for lack of jurisdiction." The clerk will then close the file.

---

[2] *Ritzen* drew a distinction between dismissals and mere transfers. 140 S. Ct. at 590 & n.3. The Court observed that a "dismissal for improper venue" is one that "ranks as a final decision." *Id.* at 590. The Court "note[d], however, that within the federal court system, when venue is laid in the wrong district, or when the plaintiff chooses an inconvenient forum, transfer rather than dismissal is ordinarily ordered if 'in the interest of justice.'" *Id.* at 590 n.3 (quoting 28 U.S.C. §§ 1404(a), 1406).

3

SO ORDERED on November 14, 2022.

s/ *Allen Winsor*          
United States District Judge