## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC, | Case No. 24-90505 (CML) |
| Debtor. | |
| THE COALITION OF COUNSEL FOR JUSTICE FOR TALC CLAIMANTS, | |
| Appellant, | Civil Action No. 4:24-cv-04742 |
| v. | Hon. Keith P. Ellison, U.S.D.J. |
| RED RIVER TALC LLC, | |
| Appellee. | |

## APPELLANT COALITION OF COUNSEL FOR JUSTICE FOR TALC CLAIMANTS'OPPOSITION TO DEBTOR-APPELLEE'S MOTION TO DISMISS APPEAL

## DISCLOSURE STATEMENT

Pursuant to Rule 8012(a) of the Federal Rules of Bankruptcy Procedure, counsel for the appellant Coalition of Counsel for Justice for Talc Claimants states that the Coalition ("Coalition") comprises law firms representing individual claimants in the underlying chapter 11 case of Red River Talc LLC.  No parent corporations or publicly held corporations own 10% or more of the stock of any members of the Coalition.

## TABLE OF CONTENTS

Background ............................................................................................................3

    A. The MDL Proceeding ...........................................................................3

    B. Red River Predecessors' Prior Bad-Faith Bankruptcy Filings..............4

    C. Red River Files for Bankruptcy in this District ...................................5

    D. Change of Venue Motion in the Bankruptcy Court..............................6

Argument...............................................................................................................7

  I.   Leave to Appeal is Warranted Here................................................................7

    A. An Important Question of Law Controls the Motion's Outcome. ........8

    B. There Is Substantial Ground for Difference of Opinion on this
    Question, as Evidenced by Rulings Connected to this Case.....................9

    C. An Immediate Appeal from the Venue Order Will Materially Advance
    the Ultimate Termination of the Litigation. ...............................................9

  II. Alternatively, this Court Should Consider Withdrawal of the Reference of the
  Venue Contested Proceeding...............................................................................11

Conclusion...........................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*City of N.Y. v. Exxon Corp.*,
  932 F.2d 1020 (2d Cir. 1991) ..............................................................................12

*Harrington v. Purdue Pharma, L.P.*,
  603 U.S. 204 (2024)...........................................................................................15

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
  220 F. Supp. 3d 1356 (J.P.M.L. 2016) ................................................................3

*In re LTL Mgmt., LLC*,
  64 F.4th 84 (3d Cir. 2023) ...................................................................................4

*In re LTL Mgmt., LLC*,
  652 B.R. 433 (Bankr. D.N.J. 2023).....................................................................5

*In re Pacific Lumber Co.*,
  584 F.3d 229 (5th Cir. 2009) .............................................................................10

*In re Royce Homes LP*,
  466 B.R. 81 (S.D. Tex. 2012)..............................................................................7

*In re TFRC Enters., LLC*,
  No. 4:23-CV-01394, 2023 WL 4291643 (S.D. Tex. June 28, 2023).....................7

*Matter of Vicars Ins. Agency, Inc.*,
  96 F.3d 949 (7th Cir. 1996)...............................................................................12

Order Transferring Case to the District of New Jersey, In Re LTL Mgmt. LLC,
  No. 21-30589 (Bankr. W.D.N.C. Nov. 16, 2021)....................................................4

*Patterson v. Mahwah Bergen Retail Group, Inc.*,
  636 B.R. 641 (E.D. Va. 2022) .............................................................................8

*Qazi v. Stage Stores, Inc.*,
  2020 WL 1431720 (S.D. Tex. Mar. 23, 2020) .......................................................7

*See Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ............................................................................................15

**Statutes**

28 U.S.C. § 1407 ..............................................................................................14

11 US.C. § 524(g) ...............................................................................................5

28 U.S.C. § 1412. ...............................................................................................6

28 U.S.C. § 157(d) ...........................................................................................11

28 U.S.C. § 636(b)(1) .......................................................................................14

28 U.S.C. § 1292(b) ...........................................................................................7

**Other Authorities**

A. Bradt et al., *Disonance and Distress*, 91 Fordham L. Rev. 309 (2022) ..............13

A. Gluck et al., *Against Bankruptcy: Public Litigation Values Versus the Endless
Quest for Global Peace in Mass Litigation*, 132 YALE L. J. FORUM 525, 544
(2023) .............................................................................................................13

Federal Judicial Center, Manual for Complex Litigation, Fourth ...........................14

L. Rossi, *The Texas Two-Step:  How Corporate Debtors Manipulate Chapter 11
Reorganizations to Dance Around Mass Tort Liability*, 39 Emory Bankr. Dev. J.
585 (2023) ........................................................................................................8

M. Francus, *Texas Two-Stepping Out of Bankruptcy*, 120 Mich L. Rev. Online 38
(2023) .............................................................................................................11

**Rules**

Bankruptcy Rule 8004(d) ....................................................................................7

FED. R. CIV. P. 1 ...............................................................................................16

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 4. ...............................................................................16

Appellant Coalition of Counsel for Justice for Talc Claimants ("Coalition") urges the Court to deny the Motion to Dismiss of Debtor Red River Talc LLC ("Red River") (Dkt. 4.) Fundamentally, Red River seeks to avoid the involvement of Article III courts in resolution of the mass tort for which it is responsible.

Red River would have this Court believe history began with Red River's corporate formation by the Johnson & Johnson family of companies (collectively, "J&J") in late summer 2024.  In Red River's telling, it is just a simple Texas company—with some Texas creditors, and a single officer resident in Texas—that is the subject of a run-of-the-mill venue decision in a run-of-the-mill bankruptcy.

The reality is far different. In fact, Red River and J&J have sought for years to stretch the Bankruptcy Code beyond all recognition. This latest effort is aimed at Section 524(g), which provides for the discharge of asbestos claims against third parties in narrow circumstances. Specifically, Red River and J&J are seeking to use the Bankruptcy Court in this District to allow one of the richest and most profitable corporations in the world to cabin liability for a mass tort it inflicted on individual consumers who developed ovarian and other gynecological cancers from use of Johnson's Baby Powder and related products that J&J knew for many years contained asbestos-laden talc likely to cause cancers.  J&J has striven to rid itself of the tens of thousands of claims for severe harm by disposing of them through the bankruptcy courts at the lowest possible cost, to retain maximum profits.

To this end, J&J and the various subsidiaries it has spawned specifically for this purpose, now including Red River, have invoked the federal bankruptcy power—not once, not twice, but three times. Using corporate engineering monikered as the "Texas Two-Step," J&J has caused Chapter 11 bankruptcy filings of purpose-built corporate shells in three different jurisdictions—the Western District of North Carolina, the District of New Jersey, and now the Southern District of Texas—all in search of favorable legal rulings that allow it to benefit from the bankruptcy code without actually subjecting itself or any of its operating affiliates to bankruptcy. Not only have the predecessors to Red River already litigated venue in other jurisdictions, but they were twice deemed to have filed for bankruptcy in bad faith given the lack of financial distress.

Against this backdrop, the change of venue motion at issue here is no mere matter of party convenience, nor even just a routine question of a filer's forum shopping. Rather, it is the last practical opportunity for review of a scheme that turns the constitutional bankruptcy power and statutory bankruptcy system upside down by ring-fencing assets of a tortfeasor instead of merely discharging debts and distributing the property of a debtor unable to repay all creditors. In light of the novel legal questions and important interests, the Coalition asks this Court to deny the debtor's Motion to Dismiss and proceed to the merits on grant of leave to

appeal or, in the alternative, by withdrawal of the bankruptcy reference with respect to this contested proceeding.

**BACKGROUND**

J&J and Red River's predecessors have litigated related cases in the District of New Jersey for eight years. Unhappy with their results, they purport to have reinvented themselves as Texans seeking a clean slate to obtain a different interpretation of bankruptcy law.

## A. The MDL Proceeding

A federal Multi-District Litigation, No. 2738, involves tort claims by tens of thousands of victims who developed cancer from their use of "Johnson's Baby Powder" and "Shower to Shower" products. *At J&J's request*, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated the tort cases in the District of New Jersey nine years ago. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356 (J.P.M.L. 2016). The JPML noted that jurisdiction "is located in close proximity to a large number of state court actions pending in New Jersey and other jurisdictions on the East Coast of the United States." *Id.* at 1359. And it said: "As Johnson & Johnson is headquartered in New Jersey, relevant evidence and witnesses likely are located in the District of New Jersey." *Id.*

3

**B. Red River Predecessors' Prior Bad-Faith Bankruptcy Filings**

In October 2021, J&J first performed a so-called "Texas Two-Step" by executing a divisive merger under Texas Law to cleave all talc liabilities into Red River's predecessor LTL Management LLC ("LTL"). At that time, J&J made LTL (named as an acronym of "Legacy Talc Liabilities") into a North Carolina company so that LTL could file its first bankruptcy in the Western District of North Carolina. But the Bankruptcy Court for the Western District of North Carolina transferred the case in the interests of justice to the District of New Jersey. *See* Order Transferring Case to the District of New Jersey, *In Re LTL Mgmt. LLC*, No. 21-30589 (Bankr. W.D.N.C. Nov. 16, 2021) ("2021 Transfer Order") (finding that "the Debtor is not just forum shopping; the Debtor is manufacturing forum and creating a venue to file bankruptcy" and that "the Debtor's actions indicate a preference to file bankruptcy in this district," likely due to circuit caselaw). Ultimately, in January 2023, the U.S. Court of Appeals for the Third Circuit reversed the Bankruptcy Court for the District of New Jersey and directed dismissal of the first Chapter 11 bankruptcy filing because LTL "was not in financial distress [and so could not] show its petition served a valid bankruptcy purpose." *In re LTL Mgmt., LLC,* 64 F.4th 84, 110 (3d Cir. 2023) ("LTL Bankruptcy I").

4

Just over two hours after dismissal of the first bankruptcy, LTL filed for bankruptcy a second time, this time directly in the District of New Jersey. Finding that LTL still had access to "an ATM disguised as a contract" with the now-reduced value of nearly $30 billion, Chief Bankruptcy Judge Michael B. Kaplan concluded that "LTL is not sufficiently financially distressed to avail itself of bankruptcy." *In re LTL Mgmt., LLC*, 652 B.R. 433, 448 (Bankr. D.N.J. 2023) ("LTL Bankruptcy II"), *aff'd*, Nos. 23-2971 & 23-2972, 2024 WL 3540467 (3d Cir. July 25, 2024). The Third Circuit, without argument, affirmed the dismissal. *Id.*

### C. Red River Files for Bankruptcy in this District

On June 6, 2024, J&J distributed solicitation materials and ballots for a prepackaged bankruptcy petition of a yet-to-be-formed made-for-bankruptcy subsidiary (ultimately, Red River).  The plan sought to make innovative use of 11 U.S.C. § 524(g), enacted by Congress in 1994 to reflect the Johns-Manville resolution template deploying a trust and injunction to protect claimants in asbestos cases where a debtor is overwhelmed by claims.  To avail itself of Section 524(g) so as to obtain bankruptcy releases for non-debtor affiliates, 75% of claimants were required to vote for the plan by a deadline of July 26, 2024.

When J&J failed to reach the necessary 75% minimum threshold by the voting deadline, J&J sought to change votes, even by going outside the bounds of its own solicitation procedures.  As but one example, J&J approached a law firm

that was party to a joint venture agreement with another law firm representing a significant number of votes that had been cast against the plan, reached a separate deal with that law firm, and conditioned such deal on that firm switching the votes of over 11,000 claimants to votes in favor of the plan—all without the knowledge of its joint venture law firm.  As a result of the vote switch, J&J proclaimed it had obtained "overwhelming support" for its plan.

Red River was then created on August 19, 2024, and filed for bankruptcy in the Southern District of Texas on September 20, 2024.

### D. Change of Venue Motion in the Bankruptcy Court

The Coalition moved the Bankruptcy Court to transfer the case under 28 U.S.C. § 1412. On October 10, 2024, the Bankruptcy Court held a hearing and ruled that it had discretion to deny the motion and keep the case, and would do so. A one-sentence order issued on the same date. (Bankr. Dkt. 245.)

The Coalition moved for reconsideration on October 23, 2024. The Bankruptcy Court denied the motion from the bench on November 12, 2024.  A one-sentence order issued on the same date. (Bankr. Dkt. 510.)

On November 26, 2024, the Coalition filed a timely Notice of Appeal on the question before the Court in this case. (Bankr. Dkt. 672.)

**ARGUMENT**

## I.    Leave to Appeal is Warranted Here.

Bankruptcy Rule 8004(d) provides that a District Court may "treat the notice of appeal as a motion for leave and either grant or deny it."

Red River correctly notes that district courts often borrow from 28 U.S.C. § 1292(b) in guiding Bankruptcy Rule 8004(d) determinations. *See, e.g., In re Royce Homes LP*, 466 B.R. 81, 93 (S.D. Tex. 2012) (collecting cases but noting the Fifth Circuit has reserved the question of mandatory application of Section 1292(b) factors). Under this approach, leave should be granted when: "(1) the order 'involves a controlling question of law,' (2) 'there is substantial ground for difference of opinion' on that question, and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Qazi v. Stage Stores, Inc.*, 2020 WL 1431720, at *2 (S.D. Tex. Mar. 23, 2020) (quoting Section 1292(b)). At bottom, the nature of an appeal may be "sufficiently important that the Court prefers to deal with its merits rather than debate the finality of the underlying Bankruptcy Court order." *In re TFRC Enters., LLC*, No. 4:23-CV-01394, 2023 WL 4291643, at *1 (S.D. Tex. June 28, 2023).

Here, for several independent reasons, the Court should grant leave to consider the question on the merits.

### A. An Important Question of Law Controls the Motion's Outcome.

First, the ruling on appeal has important structural consequences for the bankruptcy courts and for the federal courts writ large: Can any wealthy conglomerate using the Texas divisive merger statute to shed mass tort claims through a prepackaged bankruptcy of a special purpose entity choose its own forum among the federal courts—even multiple times over if it does not like the results from its initial venue?  *See Patterson v. Mahwah Bergen Retail Group, Inc.*, 636 B.R. 641, 655 (E.D. Va. 2022) (describing prevalent use of particular bankruptcy jurisdictions as undermining assertions that they are integral to the success of a particular reorganization plan).

If the decision on appeal is allowed to stand, the Bankruptcy Court in this District will be opening its doors to tortfeasor-driven resolution of nearly any mass tort through the bankruptcy process using the "Texas Two-Step" that represents the corporate engineering phenomenon at the heart of this case. One of the maneuver's proponents is widely reported to have called it "the greatest innovation in the history of bankruptcy." *See,* L. Rossi, *The Texas Two-Step:  How Corporate Debtors Manipulate Chapter 11 Reorganizations to Dance Around Mass Tort Liability*, 39 Emory Bankr. Dev. J. 585, 601 (2023). Given that choice of venue is a focal point and essential lynchpin to the Texas Two-Step, this appeal is of

significant moment. *See id. at* 621 (describing centrality of venue determination to the so-called "Texas Two-Step").

### B. There Is Substantial Ground for Difference of Opinion on this Question, as Evidenced by Rulings Connected to this Case.

This case has an unusual history whereby the Red River Chapter 11 petition, as such, represents the third attempt at resolving the same mass tort through a novel bankruptcy scheme. In the first bankruptcy in 2021, J&J looked to create venue for its purpose-built entity by filing in the Western District of North Carolina. But the Bankruptcy Court there—examining the same factors at issue in the decision on appeal—transferred the case to J&J's actual home, the District of New Jersey. *See* 2021 Transfer Order.

This District's Bankruptcy Court effectively came to a different conclusion not just on the same facts, but on a subset of the same underlying tort liabilities transferred into Red River as the successor vehicle. This Court should entertain the Appeal now to resolve the conflict.

### C. An Immediate Appeal from the Venue Order Will Materially Advance the Ultimate Termination of the Litigation.

Prior to filing the Red River bankruptcy, J&J urged that this moment would be the best and proper time to litigate venue. Certain tort plaintiffs, among the claimants represented by the Coalition law firms, moved after the plan was announced in summer 2024 for an injunction against J&J from seeking a new

venue to outrun the jurisdiction of the Courts in which it had already litigated—and lost. Red River, by its predecessor, told the Court of Appeals for the Third Circuit (by some of the same counsel appearing on the Motion to Dismiss now before this Court): "If creditors do not believe the debtor's choice of venue should be respected, their remedy is to seek to transfer venue before the bankruptcy court in which the case was filed. That issue would be properly before that bankruptcy court in the first instance—if and when an actual petition were filed—employing statutory provisions (28 U.S.C. §§ 1408, 1409, 1412) and well-established standards for adjudicating such matters."  Defendants-Appellees' Response to Plaintiffs-Appellants' Emergency Motion for Injunction Pending Appeal or, Alternatively, to Expedite Appeal at 21, Dkt. 12, No. 24-2214 (3d Cir.).

The Coalition is now at just that point. As Red River insisted, the venue question was litigated in the Bankruptcy Court of its chosen forum. But the implication of its observation that this was a "first instance" of hearing on the issue implies that there is also customary right to appeal. And this is the appropriate, efficient moment for this District Court to review and decide that issue.

As Red River well knows—indeed, as it argues—it is pushing the Bankruptcy Court to confirm its plan at maximum speed. Whatever the appropriateness of that, it could well result in equitable (or other) mootness on this issue. *See In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009) ("Equitable

mootness is a kind of appellate abstention that favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest.").  If this Court denies leave to hear and decide the venue question on the merits now, it may not merely be abstaining from a routine forum question but eschewing opportunity for meaningful Article III review of the transformation of the mass tort and bankruptcy practice that Red River and its counsel seek to employ. *See* M. Francus, *Texas Two-Stepping Out of Bankruptcy*, 120 Mich L. Rev. Online 38, 38 (2023) ("The Texas Two-Step is the latest addition to a panoply of aggressive techniques debtors have developed to gain the upper hand against creditors.").

Accordingly, the Court should grant leave and hear the Appeal now.

## II. Alternatively, this Court Should Consider Withdrawal of the Reference of the Venue Contested Proceeding.

Appellants move this Court in the alternative to construe the Appeal as a suggestion to withdraw the reference of the venue motion (which is a "contested matter" within the meaning of Bankruptcy Rule 9014). *See* 28 U.S.C. § 157(d). Tens of thousands of cases are pending in a Multi-District Litigation consolidated for pre-trial purposes pursuant to 28 U.S.C. § 1407. Red River's entire purpose is to invoke the bankruptcy power to subsume the MDL and all current and future related litigation. "[R]esolution of the proceeding" thus inherently requires "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *See* 28 U.S.C. § 157(d);

11

*City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (withdrawal of reference appropriate where consideration of non-bankruptcy statute is substantial and material and requires interpretation); *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996) (accord).

Moreover, a reference withdrawal analysis reasonably frames this venue appeal as not merely a request for an appellate look at an administrative matter, but in fact a *first* look by an Article III court at structural questions that run to the supervisory obligations of Article III courts over the bankruptcy system. This Court has solid foundation to withdraw the reference as to this motion to correctly and impartially decide the venue determination. Even if this Court declines to reverse the venue determination or transfer the case on withdrawal of reference, the Coalition urges it to withdraw the reference so that the venue motion does not become equitably moot.

The central question is a narrow federal courts problem: After eight years of litigation in the District of New Jersey, its Bankruptcy Court, and the Court of Appeals for the Third Circuit, may Red River and J&J avail themselves of an entirely new federal forum in search of a blank slate for new interpretation of law from different judges? The parties are in fundamental disagreement about a non-bankruptcy issue: Who decides how much injured talc plaintiffs will get, individually and in the aggregate? J&J—a family of companies under a publicly

traded entity with a market capitalization of more than $377 billion—would very much like to make that decision for claimants and courts, capping resources for all relevant claims at $9 billion over 25 years. *See* A. Bradt et al., *Disonance and Distress*, 91 Fordham L. Rev. 309, 317 (2022) ("While the closure that bankruptcy offers may sometimes increase the size of the pie, converting tort victims from plaintiffs to creditors can significantly reduce their leverage to demand their share"). The significant sums at stake cannot distract from the fact that it is Red River that seeks to artificially limit recovery for the tens of thousands of people J&J harmed by marketing and selling products they knew were carcinogenic.

Moreover, in its aggressive pursuit of 75% consents to its current prepackaged bankruptcy plan, J&J has sought to play injured claimants against each other while attempting to cloak its Red River plan in the language of democratic values. But no bankruptcy is required for J&J to settle with any or all talc plaintiffs. Indeed, the Red River plan is surely not an exercise in charity; it seeks to impose a capped settlement on unwilling claimants and extinguishes the individual claimants' rights to vindication at trial. And, at the same time, J&J seeks to undermine the Article III courts, the statutory MDL system, and the particular MDL for these torts. *See* A. Gluck et al., *Against Bankruptcy: Public Litigation Values Versus the Endless Quest for Global Peace in Mass Litigation*, 132 YALE L. J. FORUM 525, 544 (2023) (describing how the Texas Two-Step "not only

13

shifts power and leverage to defendants, but [] also threaten[s] to shut off the traditional tort process—and with it, the public benefits of litigating mass-harm cases—entirely").

J&J's interest in using the bankruptcy power to limit its liability is obvious. But the bankruptcy is inextricably connected to an MDL that has consolidated cases before a single court. *See* Federal Judicial Center, Manual for Complex Litigation, Fourth (hereinafter "MCL Fourth") § 22.511 ("One of the values of multidistrict proceedings is that they bring before a single judge all of the federal cases, parties, and counsel comprising the litigation."). For any given MDL, the Judicial Panel on Multidistrict Litigation has made a statutory finding that the consolidation "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.

To be sure, an Article III judge is empowered—even encouraged—to work with other judicial officers to reach creative and efficient resolution of the transferred proceedings. *See, e.g.*, MCL Fourth § 11.53 (discussing referrals to U.S. Magistrate Judges under 28 U.S.C. § 636(b)(1)). Indeed, bankruptcy entails special powers that may be helpful to global settlements, and a mass tort MDL and bankruptcy filing may go hand in hand. *See id.* MCL Fourth §§ 22.51-22.59.

Put simply, this argument about venue encompasses Red River's abuse of the horizontal system of the federal courts to escape MDL proceedings. It is not a

14

dispute over whether bankruptcy may have a role to play in resolution of these claims. This Article III Court need not settle here on the Motion to Dismiss the question of whether Chapter 11 may be an effective companion to an MDL in mass tort claims resolution; it should merely ensure an Article III court decides that question of whether and how bankruptcy has a role to play.

The Bankruptcy Courts have been created by Congress "treacherously close to the constitutional line." *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 94 (1989) (Blackmun, J., dissenting). The question in structural analysis of bankruptcy usage is whether there is reason for the Article III courts "to rock the boat." *Id.* at 95. Here, where the proposed use of the bankruptcy courts is so clearly beyond what Congress envisioned in creating them, the case for intervention by this District Court is plain. *See Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204, 226 (2024) (holding that "if a policy decision" to stretch the bankruptcy power in further of global resolution of a mass tort "is to be made, it is for Congress to make.").

At bottom, the Court need imminently look only to the threshold questions of whether to withdraw the reference on venue, and whether to return this threequel petition to the District of New Jersey. That District is not only the first-filed (MDL) forum, but also—unusually—*the one chosen by J&J*, which instead

15

seeks to resolve the same issues with successor parties in Texas. *See* JPML Order, 220 F.Supp.3d at 1359.

This is not a request to preclude Defendants from a prepackaged bankruptcy or from proposing any creative or constructive step toward a global settlement of relevant claims. A withdrawal of the bankruptcy reference with respect to the venue motion is appropriate to protect the MDL statutory scheme and to ensure Article III supervision of the use of bankruptcy so as not to exceed the constitutional or statutory bankruptcy power.

J&J's venue gamesmanship is an affront to judicial economy, spurning the public investments that the District of New Jersey and related courts have made to further the "just, speedy, and inexpensive" determination of tort claimants' actions. *Cf.* Fed. R. Civ. P. 1. It should be rejected. It seeks to coopt this District Court into undermining the Bankruptcy Clause of the Constitution, which gives Congress the power to establish "<u>uniform</u> laws on the subject of Bankruptcies throughout the United States. *See* U.S. Const. art. I, § 8, cl. 4 (emphasis added).

For purposes of this Motion, it is enough for the Court to determine that the issue on Appeal is sufficiently important to be dealt with on the merits rather than on any non-jurisdictional technicality of the appeal. The Motion should be denied as such or the reference should be withdrawn with respect to this limited proceeding.

16

## CONCLUSION

The Coalition has properly and timely raised an important question of law that this Court should address on the merits. This Court should grant leave to appeal and deny the Motion to Dismiss, or, in the alternative, withdraw the bankruptcy reference with respect to the venue motion subject to further proceedings.

Date: February 17, 2025          Respectfully submitted,
      Houston, Texas

                                          **LAWSON & MOSHENBERG PLLC**

                                          */s/ Nicholas R. Lawson*
                                          Nicholas R. Lawson
                                          Texas Bar No. 24083367
                                          Avi Moshenberg
                                          Texas Bar No. 24083532
                                          801 Travis Street
                                          Suite 2101 #838
                                          Houston, TX 77002
                                          Telephone: 832-280-5670
                                          Nick.Lawson@lmbusinesslaw.com
                                          Avi.Moshenberg@lmbusinesslaw.com

                                          -AND-

                                          **OTTERBOURG P.C.**

                                          Melanie L. Cyganowski[*]
                                          Adam C. Silverstein*
                                          Sunni P. Beville*
                                          230 Park Avenue

---

[*] *Pro Hac Vice* application forthcoming.

17

New York, New York 10169-0075
(212) 661-9100
mycganowski@otterbourg.com
asilverstein@otterbourg.com
sbeville@otterbourg.com

-AND-

**BAILEY & GLASSER LLP**
Joshua I. Hammack*
Michael L. Shenkman*
Brian A. Glasser *
David L. Selby II*
1055 Thomas Jefferson Street, NW,
Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
mshenkman@baileyglasser.com
jhammack@baileyglasser.com
bglasser@baileyglasser.com
dselby@baileyglasser.com

*Co-Counsel for Coalition of Counsel for Justice for Talc Claimants*

## Certificate of Compliance

I certify that this document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document excluded by Fed. R. Bankr. P. 8015(g), it contains 3,861 words.


*/s/ Nicholas R. Lawson*
Nicholas R. Lawson

**Certificate of Service**

I certify that a true and correct copy of the foregoing document and all attendant papers were served upon counsel via the Court's electronic filing system on February 17, 2025.


/s/ Nicholas R. Lawson
Nicholas R. Lawson

## APPENDIX

*In Re LTL Mgmt. LLC*, No. 21-30589 (Bankr. W.D.N.C. Nov. 16, 2021)